400 S.E.2d 546

Luis E. SORIANO

v.

Mayra M. SORIANO.

No. 19407.

Supreme Court of Appeals of
West Virginia.

Dec. 12, 1990.

Michael C. Doss, Walter W. Weiford, Marlinton, for Mayra M. Soriano.

Martin V. Saffer, Marlinton, for Luis E. Soriano.

McHUGH, Justice:

This case is before the Court upon the appeal of Mayra M. Soriano, from the final order of the Circuit Court of Pocahontas County. The appellee is Luis Soriano. For the reasons set forth in this opinion, we remand this case.

I

The appellant and appellee were married in the Dominican Republic on November 20, 1971. The parties were divorced on April 6, 1987. Three children were born of the marriage, all minors at the time of the parties' divorce.

A special commissioner was appointed in the underlying divorce action. The special commissioner recommended that the par-

ties be granted a divorce and that the appellant be awarded custody of the three minor children.[1]

Following a hearing in the circuit court, the parties were granted a divorce. The April 6, 1987 order granting such divorce awarded custody of the children to the appellant. This order also provided that the appellee would pay child support in the amount of $250 per month per child and that "the child exemptions and deductions for Internal Revenue Service purposes, including 1986, be granted to the Plaintiff[,]" the appellee herein.

The appellant failed to execute the appropriate documents which would allow her former husband, the appellee, to claim the children as dependents. Consequently, the circuit court, on February 6, 1989, entered an order requiring the appellant to execute the appropriate documents so as to allow the appellee to claim the dependent exemptions.

The appellant refused to execute the pertinent documents, and, consequently, the circuit court, on June 21, 1989, held that the appellant "is in contempt of the spirit of the Order of this Court entered on April 6, 1987." It is the June 21, 1989 circuit court order which is appealed in this case.[2]

## II

The narrow issue in this case is whether a trial court has the power to order a custodial parent to waive a dependent exemption for income tax purposes to which such custodial parent would otherwise be entitled pursuant to 26 *U.S.C.* § 152 (1988).

Before we address this issue, a brief discussion of general provisions under the *Internal Revenue Code* is necessary. There are three important *Internal Revenue Code* provisions with which we deal in addressing the issue in this case: 26 *U.S.C.* § 151(c)(1) (1988), which provides an exemption for each dependent of a taxpayer; 26 *U.S.C.* § 152(a) (1988), which sets forth the definition of "dependent"; and 26 *U.S.C.* § 152(e) (1988), the key provision in this case, which addresses the situation of divorced parents, and which parent in such situation may claim the dependency exemption.

A taxpayer is entitled to a personal exemption deduction for each of his or her dependents. 26 *U.S.C.* § 151(c)(1) (1988) provides:

**(c) Additional exemption for dependents**

**(1) In general**

An exemption of the exemption amount for each dependent (as defined in section 152)—

(A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than the exemption amount, or

(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student who has not attained

---

1. The special commissioner made no recommendation concerning the issue in this case, namely, which party should be allowed to claim the children as dependents for income tax purposes.

2. The appellee filed a motion in this Court to dismiss this case, contending that the appeal was improvidently granted. In support of this contention, the appellee points to the language contained in the June 21, 1989 order, which stated that the appellant "is in contempt of the spirit of the Order of this Court entered on *April 6, 1987.*" (emphasis supplied) The appellee maintains that because the appellant argues that the circuit court, in its *April 6, 1987* order, lacked subject-matter jurisdiction over the issue

in this case, thus rendering the appellant aggrieved by *that* order, then, in reality, it is the April 6, 1987 order that is appealed and not the June 21, 1989 order. Carrying this contention to its logical conclusion, the period for appeal would have expired on December 6, 1987, which is eight months after the April 6, 1987 order. (*W.Va.R.App.P.* 3(a), at that time, provided an eight-month appeal period. *See also W.Va. Code,* 58–5–4, as amended. The appeal period under these provisions is now four months.)

We denied the appellee's motion to dismiss on July 24, 1990. The appellant is aggrieved by the June 21, 1989 order, notwithstanding its language, for it was *that* order which held the appellant in contempt of court.

the age of 24 at the close of such calendar year.[3]

As parenthetically noted in § 151(c)(1), 26 U.S.C. § 152 (1988) defines "dependent." Specifically, paragraph (1) of § 152(a) sets forth the following:

**(a) General definition**

For purposes of this subtitle, the term 'dependent' means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

(1) A son or daughter of the taxpayer, or a descendant of either[.]

The issue in this case squarely confronts this Court's holding in *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987). There, we held:

As an incident to awarding child support, a circuit court may allocate the federal and state income tax child dependency exemption to the non-custodial parent under *IRC* § 152(e), as amended in 1984, by requiring the custodial parent to execute the necessary waiver under *IRC* § 152(e)(2)(A) to allocate the dependency exemption to the noncustodial parent.[4]

*Id.*, syl. pt. 6.

26 U.S.C. § 152(e) (1988), in pertinent part, provides:

**(e) Support test in case of child of divorced parents, etc.**

**(1) Custodial parent gets exemption**

Except as otherwise provided in this subsection, if—

(A) a child (as defined in section 151(c)(3)) receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year *from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the 'custodial parent').*

**(2) Exception where custodial parent releases claim to exemption for the year**

A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the non-custodial parent if—

(A) *the custodial parent signs a written declaration* (in such manner and form as the Secretary may by regulations prescribe) *that such custodial parent will not claim such child as a dependent* for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncusto-

---

**3.** The specific amount of the exemption is set forth in 26 U.S.C. § 151(d) (1988), which provides, in part:

> **(d) Exemption amount**
> For purposes of this section—
> **(1) In general**
> Except as provided in paragraph (2), the term 'exemption amount' means—
> (A) $1,900 for taxable years beginning during 1987,
> (B) $1,950 for taxable years beginning during 1988, and
> (C) $2,000 for taxable years beginning after December 31, 1988.

> **(2) Exemption amount disallowed in the case of certain dependents**
> In the case of an individual with respect to whom a deduction under this section is allowable to another taxpayer for a taxable year beginning in the calendar year in which the individual's taxable year begins, the exemption amount applicable to such individual for such individual's taxable year shall be zero.

**4.** *Internal Revenue Code* provisions are often cited by "*I.R.C.*," followed by the specific section to be cited. These sections correspond to the same sections under Title 26 of the *United States Code.*

dial parent's return for the taxable year beginning during such calendar year.

For purposes of this subsection, the term 'noncustodial parent' means the parent who is not the custodial parent. (emphasis supplied)

Prior to 1985, under 26 *U.S.C.* § 152(e), a child was treated as receiving over one-half of his or her support from the parent who had custody of such child for the greater part of the year; hence, the custodial parent was entitled to a personal exemption deduction for that dependent child. A "special rule" existed, however, pursuant to 26 *U.S.C.* § 152(e)(2), which provided that the noncustodial parent could claim the dependency exemption if: (1) the divorce decree or a written agreement between the parents provided that the noncustodial parent would claim the exemption *and* if the noncustodial parent provided at least $600 for the support of the child during the year; *or* (2) the noncustodial parent provided at least $1200 for the support of the child during the year *and* the custodial parent failed to clearly establish that he or she provided more support for the child than did the noncustodial parent.

As a result of the former version of this statutory provision, the Internal Revenue Service was placed in the middle of many disputes between divorced parents, both of whom contended that they were entitled to the dependency exemption for their child(ren). The costly nature of the previous version of 26 *U.S.C.* § 152(e) is evidenced by the legislative history of the current version:

### Reasons for Change

The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation.

The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. II, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 697, 1140.

As can be seen in the current version of 26 *U.S.C.* § 152(e) (1988), quoted above, the general rule is that a child is treated as receiving over one-half of his or her support from the *custodial* parent. This general rule is subject to three clear exceptions, only one of which we address in this case, specifically, where the custodial parent releases his or her claim to the exemption for a particular year pursuant to 26 *U.S.C.* § 152(e)(2).[5]

■ As can be ascertained by a plain reading of the statute, the custodial parent will generally be entitled to the dependency exemption *unless* a waiver is executed. "The more difficult question is whether, as a majority of courts [which have considered the question] have held, a state trial court has the power to order a custodial parent to execute the necessary waiver in favor of the noncustodial parent." *Nichols v. Tedder*, 547 So.2d 766, 772 (Miss.1989).[6]

---

**5.** The other two exceptions deal with multiple-support agreements, 26 *U.S.C.* § 152(e)(3) (1988) and agreements entered into between the parents prior to 1985, 26 *U.S.C.* § 152(e)(4) (1988).

**6.** Other courts considering the issue in this case have held otherwise. *See, e.g., McKenzie v. Kinsey*, 532 So.2d 98 (Fla.Dist.Ct.App.1988), which held that a trial court has no authority to allocate the dependency exemption because the

noncustodial parent "does not appear to come within any of the [three] exceptions to the general rule and thus is not entitled to the exemption under the explicit language of the Code." *Id.* at 100. *Cf. Fullmer v. Fullmer*, 761 P.2d 942, 950 (Utah Ct.App.1988) (trial courts do not have authority to *grant* exemption contrary to provisions of *Internal Revenue Code;* however, there was no issue concerning whether trial court could order execution of waiver).

The appellant contends that under the sixteenth amendment to the *United States Constitution*, the federal government has preempted the states from exercising power in the area of federal taxation. The sixteenth amendment provides: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." [7]

We addressed this concern in *Cross*, pointing out that because: (1) there is no conflict between compliance with the federal and state regulations; and (2) the congressional intent of 26 *U.S.C.* § 152(e) is to ease the administrative burden of the Internal Revenue Service, then no preemption by federal law exists as it pertains to whether a state court may allocate a dependency exemption to the noncustodial parent. *Cross*, 178 W.Va. at 572–73, 363 S.E.2d at 458–59. Moreover, our research reveals that no federal court has held that a state court does not have jurisdiction over this question.

Although *Cross* was the first decision by a court of last resort to address the issue in this case, prior to *Cross*, lower courts in other states considered the question presented. *See, e.g., Lincoln v. Lincoln*, 155 Ariz. 272, 276, 746 P.2d 13, 17 (Ct.App. 1987), *review denied* (Ariz. Nov. 24, 1987); syl. pt. 1, *Fudenberg v. Molstad*, 390 N.W.2d 19 (Minn.Ct.App.1986); *see also Cross*, 178 W.Va. at 572 n. 17, 363 S.E.2d at 458 n. 17.

Subsequent to our decision in *Cross*, however, other states' highest courts have decided whether a dependency exemption may be allocated. Several of these courts have followed our lead in *Cross*, holding that a trial court does have the power to order a custodial parent to execute the necessary waiver to allocate a dependency exemption to the noncustodial parent. *Nichols v. Tedder*, 547 So.2d 766, 770–80 (Miss.1989); [8] *Fleck v. Fleck*, 427 N.W.2d 355, 357–59 (N.D.1988). Several other courts of appeal have also reached the same conclusion subsequent to *Cross*. *See In re Marriage of Einhorn*, 178 Ill.App.3d

Other cases have not been so direct in holding otherwise. In *Jensen v. Jensen*, 104 Nev. 95, 753 P.2d 342 (1988), the Supreme Court of Nevada held that coercive equitable relief (ordering execution of the waiver) was inappropriate because the "lower court could have achieved a similar economic result, as a matter of law, by merely adjusting the amount of alimony [the noncustodial parent] would have to pay [the custodial parent.]" *Id.* at 99, 753 P.2d at 345.

In *Lorenz v. Lorenz*, 166 Mich.App. 58, 419 N.W.2d 770 (1988), the Court of Appeals of Michigan held that the 1984 amendment to 26 *U.S.C.* § 152 "divested state courts of jurisdiction over which party could take the exemptions." 166 Mich.App. at 61, 419 N.W.2d at 771. In *Lorenz*, however, the court remanded the case

for a determination by the trial court of the impact of the new IRS custodial parent rule, 26 U.S.C. § 152(e), on the ability of plaintiff to pay the current rate of child support and whether or not the impact of this change in the federal tax law should be reflected by a consequent modification of the amount of child support required to be paid by plaintiff.

166 Mich.App. at 62–63, 419 N.W.2d at 772.

In *Davis v. Fair*, 707 S.W.2d 711 (Tex.Ct.App. 1986), the Court of Appeals of Texas held that although a trial court does not have the authority to allocate the dependency exemption, the trial court may find it "in the interest of justice" to reduce child support payments to reflect the

lost value of the exemption. *Id.* at 718. In *Cross*, we criticized the holding of *Davis*, accusing it of being "an extremely formalistic opinion that strains at a gnat but swallows a camel." 178 W.Va. at 572, 363 S.E.2d at 458. Our criticism of *Davis* is based upon the fact that its holding allows a trial court to "do *indirectly* what [the custodial parent] would have us prohibit a court from doing *directly.*" *Id.,* 178 W.Va. at 573, 363 S.E.2d at 459 (emphasis supplied).

7. The appellant also contends that the supremacy clause of the *United States Constitution* preempts states from exercising power in the area of federal taxation. That clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

*U.S. Const.* art. VI, cl. 2.

8. The Mississippi *Nichols* case contains an excellent discussion, thoroughly covering the key aspects of this issue and its treatment elsewhere. This case also contains detailed computations, clearly illustrating the tax consequences under every possible scenario as they relate to the issue.

212, 222–25, 127 Ill.Dec. 411, 417–19, 533 N.E.2d 29, 35–37 (1988); *Wassif v. Wassif,* 77 Md.App. 750, 759–61, 551 A.2d 935, 939–40, *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989); *Pergolski v. Pergolski,* 143 Wis.2d 166, 172–73, 420 N.W.2d 414, 417 (Ct.App. 1988).

In this opinion, we reaffirm our commitment to *Cross'* holding, but it is necessary to articulate more specifically the circumstances under which the holding therein would apply.[9]

As was stated in *Cross,* and as the Mississippi *Nichols* court has demonstrated by its computations, 547 So.2d at 774–75, 26 *U.S.C.* § 152(e) "provides an economic benefit that is of significantly greater value to a parent with income than it is to a parent without income." 178 W.Va. at 574, 363 S.E.2d at 460.[10]

Clearly, the facts in the case now before us present a situation where equitable considerations must be addressed. It is argued by the appellant that equitable considerations should not determine the permissibility of tax deductions. This contention is also advanced by courts which have held that a state court does not have the power to allocate a dependency exemption. *See, e.g., Davis v. Fair,* 707 S.W.2d 711, 717 (Tex.Ct.App.1986).

Indeed, the United States Supreme Court has stated: "The propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence. Rather, it 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.'" *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148–49, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974) (quoting *New Colonial Ice Co. v.*

*Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, 1352 (1934)).

However, we do not believe that this holding of the United States Supreme Court has any bearing on the question presented in this case. The *propriety* of a deduction is not at issue under the facts of this case. Rather, the issue concerns how a particular deduction will be *allocated.*

The appellant also contends that by amending 26 *U.S.C.* § 152, the United States Congress intended to remove state courts from allocating the dependency exemption. We do not agree.

26 *U.S.C.* § 152 (1988) is silent as to whether a state court is prohibited from allocating the dependency exemption. As we stated in *Cross,* "because state court allocation of dependency exemptions has been custom and usage for decades, it is more reasonable than not to infer that if Congress had intended to forbid state courts from allocating the exemption by requiring the waiver to be signed, Congress would have said so." 572 W.Va. at 178, 363 S.E.2d at 458.

Testimony by a certified public accountant before the special commissioner in this case indicated that the taxpayer with the higher income may save as much as fifty-eight cents per dollar in tax liability, while the taxpayer with the lower income may save only as little as ten cents per dollar in tax liability. This testimony, however, did not address the specific tax implications on the parties in this case. Rather, the testimony concerned tax implications in general, setting forth the highest and lowest possible tax liability savings.

As in this case, many situations are presented to trial courts where the noncustodial parent, who is paying child support, has greater income than the custodial parent. In these situations, the dependency

---

**9.** The appellant also asserts that "coercive equitable force" cannot be used to result in a voluntary waiver. This assertion has no merit. Obviously, one of the most common areas of divorce law involves the division of property. Accordingly, it is commonplace for courts, in dividing property, to order, by force of law, a relinquishment of rights that a party might have with respect to particular property.

**10.** We also pointed out in *Cross* that our decision therein is consistent with *W.Va.Code,* 48–2–16(b)(12) [1984], which provides that a trial court, in determining alimony and child support, must consider "[t]he tax consequences to each party[.]" 178 W.Va. at 574, 363 S.E.2d at 460.

exemption is of little to no value to the custodial parent, but it might result in greater tax liability savings to the noncustodial parent. These tax liability savings, in turn, could lead to more available funds for the support of the child.

■ Of course, the trial court would be responsible for determining the effect of such an allocation and should adjust the child support order accordingly. In determining the effect of allocating the dependency exemption, the trial court must ascertain what is in the best interest of the child. Just as in a contest involving *custody* of children, the guiding principle is the welfare of such children, *see* syl. pt. 4, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977),[11] so too, here, in determining the allocation of a dependency exemption, the trial court should be guided by the same principle, and this Court will not set aside the trial court's determination unless there is a clear abuse of discretion. *See also* syl. pt. 1, *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990), and syl. pt. 1, *Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987) (both holding that child *support* order may be modified upon showing that benefit of child requires modification and upon substantial change of circumstances).

We recognize, however, that there are situations where allocation of the dependency exemption will not achieve an equitable result, but, rather, might result in a hardship to one of the parties. Needless to point out, in these situations, the dependency exemption should not be allocated.

In a case where the dependency exemption is allocated, that is, where a trial court

requires the custodial parent to execute the necessary waiver pursuant to 26 *U.S.C.* § 152(e)(2)(A), as amended, the trial court should set forth its reasons for doing so in the order awarding child support. These reasons should clearly demonstrate that it is more equitable to allocate the dependency exemption to the noncustodial parent than it would be to allow the custodial parent to claim the dependency exemption.[12]

The circuit court in this case was correct in concluding that the dependency exemption could be allocated, as this conclusion is permitted by our holding in *Cross*. However, the record is not clear as to the specific tax implications that the circuit court's order would have on the parties. As we have held in this opinion, a trial court should set forth its reasons for allocating the dependency exemption, and its reasons should clearly demonstrate that it is more equitable to allocate the exemption to the noncustodial parent than it would be to allow the custodial parent to claim the exemption.

Therefore, we remand this case to the Circuit Court of Pocahontas County so that, guided by the principles set forth herein, it may conduct a hearing on this matter, setting forth reasons for its determination that the dependency exemption should be allocated.[13]

Remanded.

11. For the subsequent history of *Murredu*, on another point, see syl. pt. 1, *Blevins v. Shelton*, 181 W.Va. 544, 383 S.E.2d 509 (1989).

12. Precise computations, showing the tax consequences and benefits under the possible scenarios, would be desirable. Specifically, those computations include the taxable income of the custodial parent after deducting the dependency exemption as opposed to the custodial parent's taxable income without deducting the dependency exemption. Similarly, the same two com-

putations could be made for the noncustodial parent's taxable income.

13. The appellant also asserts, in a separate assignment of error, that because the circuit court lacked subject-matter jurisdiction, then it also erred by holding her in contempt. We reject this contention for the reasons stated in this opinion, that the circuit court did not lack subject-matter jurisdiction over the issue in this case. *See Hughes v. Hughes*, 35 Ohio St.3d 165, 168, 518 N.E.2d 1213, 1216, *cert. denied*, 488 U.S. 846, 109 S.Ct. 124, 102 L.Ed.2d 97 (1988).