Edward G. LAMON, Appellant–Petitioner,

v.

Wendy S. LAMON, Appellee–Respondent.

No. 49A05–9208–CV–300.

Court of Appeals of Indiana, Fifth District.

March 29, 1993.

Robert B. Lutz, Indianapolis, for appellant-petitioner.

SHARPNACK, Chief Judge.

Edward Lamon ("Edward") has filed this interlocutory appeal[1] from a support order made pursuant to Edward's petition to establish paternity. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

Edward raises four issues for review which we restate as:

1. Did the trial court improperly interpret the Indiana Child Support Guidelines ("guidelines") by computing the basic support obligation on the basis of one child as opposed to three children, the latter of which would have accounted for the parties' other two children who were born of the parties' marriage and covered in a separate support order?

---

1. We have jurisdiction of this appeal pursuant to Ind. Appellate Rule 4(B)(1).

2. Did the trial court abuse its discretion either by including $50 per week in child care costs in its computation of the basic support obligation or by determining the amount of Edward's support obligation for the two children of the parties' marriage was $100 per week?

3. Did the trial court abuse its discretion by not ordering Wendy to waive her right to claim Edward as a dependent for purposes of a federal income tax exemption?

4. Did the trial court err in computing its order for retroactive support by not giving Edward credit for payments he made on behalf of Edward Jr.?

Edward Lamon, Jr. ("Edward, Jr.") was born out of wedlock on June 24, 1986, the child of Edward and Wendy Lamon ("Wendy"). Edward Jr. has resided with his mother since birth. Edward and Wendy formerly were married. Their marriage produced two other children, born in 1983 and 1984 respectively. At the time of the hearing, Edward was paying support for the other two children pursuant to a dissolution decree. The amount of that support was disputed at the hearing, with Edward claiming that it was $125 per week and Wendy claiming that it was for $100 per week.

Edward filed his verified petition to establish paternity on December 17, 1991, to which Wendy responded with a verified cross petition to establish paternity. The court held a hearing on Edward's petition on August 12, 1992. The parties spent the vast majority of the hearing on the disputed issue of whether Edward had been paying support on behalf of Edward, Jr. in 1990 and 1991. Edward testified that he paid Wendy $105 per week for support of their children, $35 of which they both understood was for Edward, Jr. Wendy denied that Edward had ever paid support for Edward, Jr. (Record, p. 140)

In addition, Edward testified that his gross pay was $519 per week. Wendy in turn testified that she sometimes made from $300 to $500 per month baking cakes, however she also testified that she did not have an income every month. (Record, p. 154) Wendy did not report her income to the Internal Revenue Service. (Record, p. 153) Wendy also testified that all of her children by Edward would be attending school in the year following the hearing and that she did not currently pay any work related child care expenses.

In his closing argument, Edward's attorney asked both that the support obligation be calculated for all three children of the parties together and that the support order for Edward, Jr. equal Edward's share of the total support obligation minus the amount he was already paying for the other two children pursuant to the separate support order. He also requested that Edward be given the right to claim Edward, Jr. as a dependent for income tax purposes.

The trial court entered an order by which it directed Edward to pay $108 per week for support of Edward, Jr. Edward claims on appeal that the trial court applied the Indiana Child Support Guidelines in the following way.[2] The court found Edward's weekly available income to be $400.60 ($519 gross income minus $18.40 Edward contributed for health insurance premiums minus $100 that Edward was already paying under the support order for the parties' other two children) and imputed to Wendy a weekly available income of $130. Thus, the court arrived at a total weekly available income of $530.60. Using both the combined weekly income of $530.60 and one child as variables, the court then applied the schedules contained in the guidelines and obtained a basic support obligation of $96 to which it added $50 for child care costs for a total support obligation of $146. Edward's proportionate share amounted to $108.

 When we review a child support order issued in a paternity action, we look only to whether the trial court has abused

---

**2.** We say Edward "claims" because the worksheets which Edward attributes to the court are unsigned and there is not indication as to why they are included in the record. However, because Wendy did not file a brief in this case, we will treat Edward's claim in this regard as true for the purposes of this appeal.

its discretion and we will neither reweigh the evidence nor substitute our judgment for that of the trial court. *In re Paternity of R.B.T.* (1990), Ind.App., 550 N.E.2d 769, 771. The trial court's discretion is constrained, however, by the Indiana Child Support Guidelines. *Id.* The guidelines establish a rebuttable presumption that the amount of support yielded by application of the guidelines is the correct amount, Ind. Child Support Rule 2 (1992), and the trial court must state its reasons for deviating from that amount. Child Supp.R. 3 (1992); *Carter by Carter v. Morrow* (1990), Ind. App., 563 N.E.2d 183, 185.[3]

■ Edward first contends that the trial court misapplied the guidelines when it considered Edward, Jr. as one child instead of one of three children of the parties in determining the "basic child support obligation." [4]

Edward correctly reasons that the guidelines are based upon the "Income Shares Model" which is "predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together." Ind. Child Support Guideline 1 (1992). Thus, the guidelines calculate support "as the share of each parent's income estimated to have been spent on the child if the parents and child were living in an

intact household." *Id.* In addition, the commentary to the guidelines explains:

"In developing these Guidelines, a great deal of reliance was placed upon the research of Thomas J. Espenshade, generally considered the most authoritative study of household expenditure patterns. Espenshade's estimates demonstrate that amounts spent on the children of intact households go up as family income increases. *They further demonstrate that there is a decreasing level of expenditures for each child as family size increases. Espenshade should have put to rest the somewhat common practice of ordering equal amounts of support per child when two or more children are involved.*"

Child Supp.G. 1 commentary (1992) (emphasis added).

The guidelines do not deal directly with a situation like the one before us where there are three children who are the natural children of the same parents, but two of whom were born during the parents' marriage and one of whom was born following the dissolution of the marriage. The uniqueness of the situation is enhanced by the fact that support for the two children born during the marriage was established by the court having jurisdiction over the dissolu-

---

**3.** The guidelines have been amended effective March 1, 1993. However, the guidelines as they existed prior to the amendment control this case on appeal, and all references are to the pre-amendment guidelines.

**4.** At this point, a brief example using the income level and other numbers used by Edward will be helpful in illustrating the difference between the approach urged by Edward and that used by the trial court.

Under the trial court's approach, Edward had a weekly gross income of $519 and Wendy had a weekly gross income of $130. The court then deducted *from Edward's gross income* $18.40 in weekly insurance premiums paid for the children and $100 for the support paid to the two children of the marriage. This left the parties with a combined weekly available income of $531. The court then looked to the guidelines' schedules which are based upon two factors: the number of children for which support is to be determined and the parties' combined weekly available income. The amount under the schedules for one child and a combined weekly avail-

able income was $96. That amount is denominated as the the "basic support obligation" on the worksheet. The court then added $50 to the basic support obligation for a total support obligation of $146. Because Edward earned 75% of the parties' weekly available income, his proportionate share of the child's support was $108.

Under the approach urged by Edward, *there would be no deduction for the support of the parties' other two children from his gross weekly income.* The parties' weekly available income would therefore be $631. His proportionate share would likewise be greater, 79.4%. However, under Edward's approach, the court would look to the schedules for the amount given for *three* children and an available income of $631. The basic support obligation yielded by the schedules would be $203 and with $50 added for child care, the total support obligation would be $253.

Edward's proportionate share for the support of all three children would be $201. However, because Edward is already paying $100 of that amount, the order for Edward, Jr. would be only be $101.

tion, while the support for the third child was established by the court having jurisdiction over the paternity action.

■ We conclude that the operable principle of the guidelines as applied to this case is that the three children should be supported, as closely as possible, as they would have been had the family remained intact. That result can be accomplished by establishing the support for the third child at a level which, when combined with the support ordered for the other two children, will provide for the three children as a group the same level of support they would have received if support for all three had been determined at the same time. We expect that the court having jurisdiction over any future requests for modification of either support order would take this approach in considering such requests.

While it may have been within the trial court's discretion to order support over and above such an amount, the trial court did not explain its reasons for doing so. *See Carter*, 563 N.E.2d at 185. We therefore reverse and remand to the trial court either to explain its reasons for deviation from the amount derived from an application of the guidelines as described above, or to enter an award for that presumptively correct amount.

■ Edward also contends that the trial court erred in adding $50 to the basic child support obligation as representative of weekly child care costs. According to Edward the facts that all of the parties' children were of school age and attended school at least from 7:00 a.m. to 2:30 p.m. and that Wendy was not paying any child care costs at the time of the hearing bar the inclusion of child care costs as part of support calculation. While we do not agree with Edward that those facts, in and of

themselves, prohibit the inclusion of child care costs, we agree that there was not evidence in the record to support the trial court's allocation in this case. The fact that Wendy did not pay for child care at the time of the hearing did not rule out her future need for such services, in light of the fact that the trial court chose to impute a weekly income to her. However, there is no evidence in the record regarding the likely need for, or cost of, child care attributable to the children if Wendy were to find a job outside the home.[5]

■ Edward also contends that the trial court erred in determining that his support obligation for the children of the parties' marriage was in the amount of $100 per week. According to Edward, he had been paying $125 per week since the May 22, 1991 modification of the original support order. (Record, p. 56) He also testified that the order had been increased in November of 1991. However, Wendy testified that in November and December of 1991 the support order was for $100 per week. (Record, p. 145) The actual order was not introduced into evidence. We therefore hold that there was evidence in the record to support the trial court's determination and we will not reweigh that evidence or judge the credibility of the witnesses.

■ Edward next contends that the trial court abused its discretion in denying his request to be awarded the federal income tax dependency exemption for Edward, Jr. We agree with Edward that, in the proper case, the trial court has the power to order the custodial parent to sign a waiver of her presumed right to claim the child as a dependent for federal income tax purposes. *Ritchey v. Ritchey* (1990), Ind. App., 556 N.E.2d 1376, 1379; 26 U.S.C. § 152(e).[6] However, we disagree with his

---

5. Edward's brief treats the $130 weekly income attributed to Wendy as imputed income and not actual income from her cake sales. However, even if we were to view the $130 as income from her baking activities, the uncontradicted evidence shows that Wendy baked at home and did not pay for child care prior to the hearing. Furthermore, there is no evidence that her baking activities would require her to obtain child care in the future.

6. Although Edward refers to a state income tax dependency exemption in his framing of the issue, he does not direct us to the statutory provision covering such an exemption nor does he incorporate it into his argument. He therefore has waived such claims pursuant to App.R. 8.3(A)(7).

assertion that the trial court abused its discretion by not doing so.

While the line of cases epitomized by *Ritchey* addresses the power of state courts to order custodial parents to sign a waiver of the dependency exemption, none of those cases provides any guidance as to when courts should make such orders, beyond the statement that such a decision is within the trial court's discretion. The guidelines specifically except the dependency exemption from their consideration. Child Supp.G. 5 commentary (1992).

■ Other jurisdictions have addressed this question. The most prevalent view among the cases which we have found is that the trial court's equitable discretion should be guided primarily by the goal of making the maximum amount of support available for the child. *Fenner v. Fenner* (1992), Fla.App., 599 So.2d 1343, 1346, *rev. denied; Soriano v. Soriano* (1990), 184 W.Va. 302, 307, 400 S.E.2d 546, 551. *But see In re Marriage of Rogliano* (1990), 198 Ill.App.3d 404, 144 Ill.Dec. 595, 602, 555 N.E.2d 1114, 1121 (state court should make allocation of dependency exemption based upon which parent will be contributing majority of support because Internal Revenue Service historically has tied exemption to that consideration). Factors to be considered therefore are whether the noncustodial parent will be paying the majority of the support, the relative incomes of the parties, and the tax consequences of divesting the custodial parent of the exemption. *See, e.g., Allred v. Allred* (1992) Utah App., 835 P.2d 974, 978; *Soriano*, 400 S.E.2d at 551.

Although Edward did demonstrate both that he had a substantially higher income than Wendy and that he would be providing the majority of Edward, Jr.'s support, he made no attempt to relate those factors to the tax consequences of transferring the exemption or how such a transfer would benefit Edward, Jr. We therefore hold that the trial court did not abuse its discretion in denying Edward's request that he be given the dependency exemption for Edward, Jr.

■ Edward finally contends that the trial court erred when it did not credit his payments in 1990 and 1991 which he testified were understood by both he and Wendy to be support for Edward, Jr. While we disagree with Edward's assertion that he must be given credit for those payments, we also hold that the trial court's order for retroactive support is erroneous in that it is based upon a weekly support obligation which was derived from an erroneous application of the guidelines.

■ Ind.Code § 31–6–6.1–13(g) provides that: "The support order *may* include the period dating from the birth of the child. However, the support order *must* include the period dating from the filing of the paternity action." (emphasis added) An award of retroactive support for the period dating from the later of the two dates is therefore mandatory. *In re Paternity of R.B.T.* (1990), Ind.App., 550 N.E.2d 769. In addition, a court may exercise its discretion to award further retroactive support for a period of up to two years prior to the filing of the petition. *Id.* The trial court followed the statute in this case when it awarded support retroactive to December 17, 1991, the date Edward filed his petition to establish paternity. Edward himself testified that he stopped payments on behalf of Edward, Jr. in June of 1991, so there are no payments to credit against that order of retroactive support. In fact, the trial court's order may be viewed as actually crediting Edward for contributing to the support of Edward, Jr. by virtue of the fact that it did not choose to award support for the additional two year period.

However, as explained above, the trial court's calculation of the *amount* of the award for retroactive support, as opposed to the period which that award covers, is tied to the court's erroneous application of the child support guidelines in determining Edward's weekly support obligation. On remand, the court should alter the award of retroactive support in order to conform to its determination of Edward's weekly support obligation.

We need not address Edward's allegation that the court's application of the guidelines amounted to a denial of equal protec-

tion both because our interpretation of the guidelines does not result in the claimed disparate treatment of legitimate and illegitimate children of the same parents and because he did not contest the constitutionality of the guidelines in the trial court. *Lutheran Hospital of Fort Wayne, Inc. v. Department of Public Welfare of Allen County* (1979), Ind.App., 397 N.E.2d 638, 645.

In conclusion, we affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

BARTEAU and SHIELDS, JJ., concur.