## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2017, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer Irons Jostes
Cedar Lake, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Paternity of Kyler S. Potoski, Riley N. Potoski, and Ellie R. Potoski | November 15, 2017 |
| Brent S. Potoski, | Court of Appeals Case No. 37A03-1704-JP-947 |
| *Appellant-Respondent,* | Appeal from the Jasper Circuit Court |
| v. | The Honorable John D. Potter, Judge |
| Nicole Stotts, | Trial Court Cause No. 37C01-1609-JP-244 |
| *Appellee-Petitioner.* | |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, Brent S. Potoski (Father), appeals the trial court's Order establishing paternity, custody, and support for his three minor children with Appellee-Petitioner, Nicole R. Stotts (Mother).

We affirm in part, reverse in part, and remand.

# ISSUES

Father raises four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court abused its discretion by awarding primary physical and sole legal custody to Mother while allowing Father to exercise minimum parenting time;

(2) Whether the trial court erred in its calculation of child support; and

(3) Whether the trial court erred in determining that Mother is entitled to claim the parties' children as dependents for tax purposes.

# FACTS AND PROCEDURAL HISTORY

Father and Mother share three children: Kyler S. Potoski, born December 5, 2002; Riley N. Potoski, born March 10, 2006; and Ellie R. Potoski, born October 10, 2008 (collectively, the Children). Although Father and Mother never married, they were together for more than fourteen years and lived as a family in Wheatfield, Jasper County, Indiana. For most of the relationship, Father and Mother both worked outside of the home, and they shared the responsibilities of child-rearing.

[5] In August of 2016, Father and Mother ended their relationship. Mother and the Children moved out of the home, and although Father desired more time with the Children, he and Mother informally operated pursuant to the Indiana Parenting Time Guidelines. Thus, while Mother had primary care of the Children, Father spent time with them on Wednesdays and every other weekend. During this time, Father did not make any payments to Mother in support of the Children. He did, however, pay for some of the Children's expenses—such as new clothing, shoes, phones, and haircuts.

[6] On September 15, 2016, the Jasper County Prosecuting Attorney's Office, at Mother's request, filed a petition to establish child support. On October 31, 2017, Father filed a petition to establish custody and parenting time, specifically requesting joint physical and legal custody. On November 9, 2017, Mother filed a petition requesting primary custody of the Children, with Father to receive parenting time.

[7] On February 23, 2017, the trial court conducted a hearing on the issues raised in the parties' petitions. On March 27, 2017, the trial court issued its Order, establishing Father's paternity to the Children. The trial court "awarded sole legal and physical custody" of the Children to Mother, "subject to . . . Father's right of parenting time as agreed by the parties with a minimum pursuant to the Indiana Supreme Court Parenting Time Guidelines, including overnights on Wednesdays." (Appellant's App. Vol. II, p. 11). The trial court ordered Father to pay $31.00 per week in child support, increased by an additional $19.00 per week to satisfy an arrearage for his lack of support following the parties'

separation. The trial court further directed that Mother would be entitled to claim the Children each year as dependents for tax purposes.

[8] Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[9] At the outset, we note that Mother has not filed an appellate brief. "When an appellee fails to submit an appellate brief, 'we need not undertake the burden of developing an argument on the [a]ppellee's behalf.'" *C.H. v. A.R.*, 72 N.E.3d 996, 1001 (Ind. Ct. App. 2017) (quoting *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014)). Instead, "we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* (quoting *Front Row Motors, LLC*, 5 N.E.3d at 758). In this context, prima facie error "is defined as[] at first sight, on first appearance, or on the face of it." *Id.* (quoting *Front Row Motors, LLC*, 5 N.E.3d at 758).

[10] "Upon finding that a man is [a] child's biological father, the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and parenting time." Ind. Code § 31-14-10-1. On appeal, our court does not reweigh evidence or assess the credibility of witnesses, and we view the evidence in a light most favorable to the trial court's judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). In family law matters, our court affords considerable deference to the trial court's determinations. *Id.* This is because of the trial court's

unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Id.*

Furthermore, when reviewing judgments with specific findings of fact and conclusions thereon, our court will "not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). We must determine "whether the evidence supports the findings and whether the findings support the judgment." *Pitcavage v. Pitcavage*, 11 N.E.3d 547, 552 (Ind. Ct. App. 2014). The trial court's findings and conclusions will be found clearly erroneous "if they are unsupported by the facts and inferences contained in the record." *Id.* at 553. "We will find the judgment to be clearly erroneous if, after reviewing the record, we are left with a firm conviction that there has been a mistake." *Id.*

## II. *Custody*

Father claims that the trial court erred by awarding primary physical and sole legal custody to Mother. Our court does not disturb a child custody determination absent an abuse of discretion. *Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997). Thus, we will only reverse the trial court's decision "if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *In re Paternity of M.W.*, 949 N.E.2d 839, 842 (Ind. Ct. App. 2011).

[13]    In support of its decision to award primary physical and sole legal custody to Mother, notwithstanding Father's request for both a joint physical and legal custody arrangement, the trial court found:

> As to visitation, Father requests joint physical custody with equally shared overnights and parenting time; however, this has not been the practice as Father has been enjoying overnights on Wednesday evenings and not having equal overnights since the parties split in July of 2016. Father claims that because he is not working right now—awaiting his union grievance claim—he could have joint physical custody and many additional opportunities for parenting time while Mother is working and the [C]hildren are not in school. Father, once again, wants the [c]ourt to base its order on terms extremely favorable to him based on a current snapshot of his life at the time of this hearing—not working, no income, plenty of time to spend with kids. This ignores Father's own testimony that he is going to save his house in bankruptcy which will require a job with steady income to reaffirm a mortgage in bankruptcy proceedings. Additionally, the [C]hildren are all school-aged and a fixed home and a fixed schedule would be in their best interests. Father's proposal to have them switch residences multiple times during the week is not in the best interests of the [C]hildren.

> Mother has been the primary provider for the [C]hildren since the parties separated with no financial help. Father has contributed nothing since the separation in support. She has maintained the [C]hildren's schedule, daycare, and daily routine—that schedule needs to be maintained. Father should have visitation according to the parenting time guidelines with an additional overnight on Wednesday nights for a total of 148 overnights of parenting time credit.

> As to custody, Ind. Code § 31-14-13-4 [*sic*] holds that a [m]other has sole legal and physical custody of a child born out of wedlock

unless the [c]ourt finds under Ind. Code § 31-14-13-23 [*sic*] that joint legal custody would be practical and in the best interests of the child. Insufficient evidence has been presented to this [c]ourt to determine that Father should overcome the statutory presumption in Ind. Code § 31-14-13-4 [*sic*]. Mother shall have full legal and physical custody of the parties' three [C]hildren.

(Appellant's App. Vol. II, pp. 9-10).

[14] Father now contends that the trial court relied on an inappropriate standard for making a custody determination as it failed to consider the best interests of the Children as required by statute. Similarly, Father argues that the trial court failed to consider the statutory factors for determining whether an award of joint legal custody is proper. Furthermore, Father insists that the trial court relied on a non-existent presumption that Mother has "sole legal and physical custody of a child born out of wedlock." (Appellant's App. Vol. II, p. 10). We largely agree with Father.

[15] When making a custody decision pursuant to a paternity proceeding,

> [t]he court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

I.C. § 31-14-13-2.

[16] In this case, rather than considering the required relevant factors, the trial court appears to have crafted its own standard. The trial court based its decision partly on the fact that, following the parties' separation, Father—at Mother's insistence—only exercised parenting time with the Children in accordance with the Parenting Time Guidelines. The trial court also criticized Father's financial struggles: Father testified that he lost his job in May of 2016 due to a medical

issue, and he is currently searching for employment while also hoping that he receives a favorable ruling in his union grievance and is able to return to his former job. At the hearing, Father testified that he was preparing to file bankruptcy but that he intended to reaffirm the mortgage on his house. The trial court found that, following the parties' separation, Mother had maintained the Children's routines and supported them without any assistance from Father, even though both parties testified that Father cared for the Children whenever permitted to do so by Mother and that he had provided the Children with certain items such as clothing and shoes.

[17] It is well established that the trial court must consider *all* relevant factors in deciding the best interests, which specifically includes those identified in Indiana Code section 31-14-13-2. *See Baxendale v. Raich*, 878 N.E.2d 1252, 1254 (Ind. 2008). Furthermore, when "a trial court is making an initial custody determination, it is required to consider all evidence from the time of [the] child's birth in determining the custody arrangement that would be in the best interest of [the] child." *In re Paternity of M.W.*, 949 N.E.2d at 843. Here, the trial court clearly failed to take into account the relationship that *both* parents have had with the Children throughout their lives. Both Father and Mother testified that they shared the responsibilities in raising their Children, and both shared a bond with the Children. Moreover, Father and Mother live only five minutes apart, so the Children's school and bus schedules are not disrupted regardless of which parent is exercising parenting time. The trial court found that Mother has maintained the Children's schedules since the separation, and

while stability is certainly relevant in deciding the Children's best interests, it is only one factor for the trial court to consider. The trial court should have analyzed all listed factors—plus any other relevant considerations—from the time of the Children's birth in making an award of physical custody. By simply relying on the parenting time and support provided by the parties from the time of their separation in July of 2016 until the hearing in February of 2017 as the basis for its support order, we find that the trial court abused its discretion.

[18] In addition to awarding primary physical custody to Mother, the trial court gave her sole legal custody. "Physical custody and legal custody are not equivalent." *Finnerty v. Clutter*, 917 N.E.2d 154, 156 (Ind. Ct. App. 2009), *trans. denied*. The parent with legal custody "may determine the child's upbringing, which includes education, health care, and religious training, unless the court determines that the best interests of the child require a limitation on this authority." I.C. § 31-14-13-4. In some cases, joint custody may be appropriate:

> (a) In a proceeding to which this chapter applies, the court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child.
>
> (b) An award of joint legal custody under this section does not require an equal division of physical custody of the child.
>
> (c) In determining whether an award of joint legal custody under this section would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint legal custody have

agreed to an award of joint legal custody.  The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint legal custody;

(2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;

(5) whether the persons awarded joint legal custody:

(A)  live in close proximity to each other; and

(B)  plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and

(7) whether there is a pattern of domestic or family violence.

I.C. § 31-14-13-2.3.

[19] It does not appear that the trial court considered any of these factors in denying Father's request for joint legal custody and awarding sole legal custody to Mother. Rather, the trial court misstated the law by applying a custodial presumption in Mother's favor. Pursuant to Indiana Code section 31-14-13-1, when a child is born out of wedlock, the biological mother has sole legal custody until a trial court orders otherwise. Once a petition to establish custody has been filed, it is incumbent upon the court to consider the statutory best interests factors in deciding a physical and legal custodial arrangement. There is no presumption favoring either parent; rather, in "an initial custody determination, the trial court presumes that both parents are equally entitled to custody." *Spoor v. Spoor*, 641 N.E.2d 1282, 1284 (Ind. Ct. App. 1994). The trial court's finding that Father failed to overcome a presumption for an award of legal custody is clearly erroneous as a matter of law.

[20] Accordingly, we reverse and remand with instructions for the trial court to enter a physical and legal custody order that reflects a consideration of all of the factors concerning the Children's best interests, along with consideration of the factors for deciding whether an award of joint legal custody is proper. Because we reverse the trial court's custody decision, we necessarily reverse its directive that, absent agreement between the parties, Father receive only the minimum parenting time accorded by the Parenting Time Guidelines.

## III. *Child Support*

[21] Father also claims that the trial court erred in ordering him to pay $31.00 per week in child support. Decisions concerning child support generally fall within

the trial court's sound discretion. *Quinn v. Threlkel*, 858 N.E.2d 665, 670 (Ind. Ct. App. 2006). Child support orders that comport with the Indiana Child Support Guidelines "bear a rebuttable presumption of correctness." *Id.* Where a trial court finds the Guidelines to be "unjust or inappropriate in a particular case, the court may enter a support award that is deemed appropriate[,]" but any deviation "must be supported by proper written findings justifying the deviation." *Id.* On review, we will reverse a child support order only if it "is clearly against the logic and effect of the facts and circumstances before the court," taking into consideration only the evidence and inferences most favorable to the trial court's decision. *Id.* "We also bear in mind that although a trial court has broad discretion to tailor a child support award in light of the circumstances before it, 'this discretion must be exercised within the methodological framework established by the guidelines.'" *Id.* (quoting *McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1251-52 (Ind. 1994)).

[22] Father insists that the trial court relied on improper figures for health insurance premiums and childcare expenses that are paid by Mother in calculating the necessary child support. Related to these issues, the trial court found as follows:

> As a preliminary matter before addressing child support, the [c]ourt will address the issue of Mother's employer-paid daycare. Mother's employer, Kos Mo, Inc., which owns and operates McDonald's restaurants, pays her daycare . . . .
>
> . . . Kos Mo, Inc., has listed the day care payments as taxable income to Mother including them on her 2016 W-2 form totaling

$49,964.50 in taxable income [of which, $5,693.08 is attributable to daycare fees]. That is the identical figure on Mother's final paystub for 2016 for her total income year-to-date including the category of 'other income'. Therefore, the [c]ourt will include that amount in her wages and include the daycare cost on the child support worksheet. . . .

(Appellant's App. Vol. II, pp. 7-8). Accordingly, the trial court determined that "Mother's weekly gross income is $961.00. She incurs daycare costs of $172.08 bi-weekly which results in weekly daycare of $86.04. Additionally, Mother incurs health insurance costs for her [C]hildren in the amount of $83.22 per week." (Appellant's App. Vol. II, p. 8).

### A. Health Insurance Premiums

[23] First considering the health insurance premiums, Father argues that the evidence presented during the hearing establishes that Mother's "employer pays the majority of her health insurance premium and that for the year 2016 the entire amount she paid out of pocket for insurance for herself and the [C]hildren was $1,322.92." (Appellant's Br. p. 17). The Child Support Guidelines provide that "[t]he weekly cost of health insurance premiums for the child(ren) should be added to the basic obligation whenever either parent actually incurs the premium expense or a portion of such expense." Ind. Child Support Guideline 3(E)(2). The commentary to the Guidelines further advise that "[o]nly that portion of the cost actually paid by a parent is added to the basic obligation. If coverage is provided without cost to the parent(s), then zero should be entered as the amount. If health insurance coverage is provided through an employer, only the child(ren)'s portion should be added." Child Supp. G. 3(E)(2) cmt.

[24] The trial court does not specify from where it derives the amount of $83.22 per week as Mother's health insurance costs for the Children, except that it is the figure (minus one cent) proposed by Mother on her child support obligation worksheet. The evidence establishes that for Mother to insure just herself would cost $360.75 per month, and the cost to insure herself plus the Children is $721.40. The difference between these figures indicates that the Children's portion of Mother's monthly health insurance premium is $360.65. This amounts to approximately $83.00 per week.

[25] However, Mother submitted documentation indicating that for 2016, a total of $1,322.92 was deducted from her wages for medical insurance. During the hearing, Mother testified that her employer covers the majority of her health insurance premiums as "a perk of being a store manager." (Tr. Vol. II, p. 32). Mother further testified as follows:

> Q. Additionally, your insurance that you have, this is a cost that you actually pay, it comes out of your paystub, does it not?
>
> A. A portion of it, yes, a small portion.
>
> Q. The—in other words McDonald's pays for the cost associated to you?
>
> A. Yes.
>
> Q. And then the additional cost, which I believe if you do the math, is $360.65 a month—
>
> A. –Yeah. I mean—

Q. –for your [C]hildren?

A. Yeah. [T]hat's 'cause when they had switched over to the whole Obamacare thing, like our insurance plans changed and I wanted to keep the plan that we had because it was better than the one that I was going to get. So I paid the "X" amount of money extra to keep what I had.

(Tr. Vol. II, pp. 39-40).

Thus, it appears that Mother paid an "'X' amount" of $1,322.92 in order to keep her Children on the same health insurance plan after changes were implemented in the law, and her employer paid the rest of the premium attributable to the Children. (Tr. Vol. II, p. 40). The Child Support Guidelines clearly state that only the cost of health insurance *actually paid* by a parent may be included in the child support calculation; thus, the trial court's inclusion of amounts paid by Mother's employer was erroneous. We remand with instructions for the trial court to re-calculate the child support order based on the fact that Mother's weekly health insurance cost for the Children is $25.44 (*i.e.*, $1,322.92 divided by fifty-two weeks).

## B. *Daycare Expenses*

Turning to the trial court's inclusion of Mother's daycare costs in its child support calculation, Father contends that the trial court erred in its finding that Mother incurs daycare costs of $86.04 per week. According to Father, this cost represents the expense of having two children in daycare, but the evidence establishes that only one of the Children would remain enrolled in daycare.

[28]    The Child Support Guidelines provide for the inclusion of "reasonable" child care costs "incurred due to employment or job search" in the support obligation calculation. Child Supp. G. 3(E)(1). During the hearing, Mother testified that her employer, as part of Mother's salary, directly pays childcare expenses for two of the parties' Children. Mother further testified:

> Q. And are both children going to the daycare regularly?
>
> A. Ellie goes regularly, Riley goes in the mornings.
>
> Q. He doesn't go in the afternoons at all?
>
> A. No. He was and then decided that he was going to come home.
>
> Q. And how old is Ellie, again?
>
> A. Eight.
>
> Q. Okay. And she's been going to the daycare for quite a while, right?
>
> A. Since she has been born yes, six weeks.
>
> Q. So is your employer aware that both kids are not going to the daycare?
>
> A. Yeah. They know that they—that Riley goes sometimes in the mornings, because I have to drop them off before work.
>
> Q. Then why are they continuing to pay for two kids to go?
>
> A. Because in the summertime there has to be somewhere for them to go in the summer and Riley is just now old enough, I

think, to be able to stay home.  Like we had just established this, this past summer.

Q.  Okay so Riley stayed home this last summer?

A.  Well, [Father] was home.

Q.  So Riley stayed home with [Father]?

A.  Yes.

Q.  This last summer?  So from at least this last summer there was only one child going to the daycare?

A.  Yeah.  Ellie went, yes.

Q.  So even if there are some daycare costs it shouldn't be $172.00 [biweekly], correct?  Because that's for two children according to this.

A.  Well you still have to pay to hold their spot.

Q.  But you just testified that Riley didn't go last summer and so he doesn't need to—doesn't need to be a spot for him, correct?

A.  Well, I guess not, not anymore cause he's old enough.

(Tr. Vol. II, pp. 34-35).

[29]  Mother's testimony on this issue is certainly not clear.  However, it does appear that while Riley—the parties' middle child—no longer requires full-time daycare during the summer, he still goes in the mornings and gets on the school bus from the daycare.  Based on this evidence, we cannot say that the trial court

erred by calculating the costs for two of the Children to attend daycare in its child support order.

## V. *Tax Exemptions*

[30] Lastly, Father claims that the trial court erred by ordering that Mother, every year, is entitled to claim all three Children as dependents on her tax return. In support of its decision, the trial court found:

> Because Mother provides health insurance, she shall claim [the tax exemption for] all of the [C]hildren in future years because under the Affordable Care Act, parents must provide health insurance for their kids. Whichever parent claims the child (or children) as a dependent when tax time rolls around is also responsible for providing the minimum essential coverage required by law and therefore, get the deduction.

(Appellant's App. Vol. II, pp. 10-11). According to Father, the trial court's finding misstates the law and fails to take into consideration certain factors set forth in the Indiana Child Support Guidelines.

[31] The Child Support Guidelines do

> not take into consideration the awarding of the income tax exemption. Instead, it is required each case be reviewed on an individual basis and that a decision be made in the context of each case. Judges and practitioners should be aware that under current law the court cannot award an exemption to a parent, but the court may order a parent to release or sign over the exemption for one or more of the children to the other parent pursuant to [the Internal Revenue Code].

Child Supp. G. 9. "A court is required to specify in a child support order which parent may claim the child(ren) as dependents for tax purposes." Child Supp. G. 9. In determining when to order a parent to release an exemption to the other parent, the trial court "is required" to consider the following factors:

> (1) the value of the exemption at the marginal tax rate of each parent;

> (2) the income of each parent;

> (3) the age of the child(ren) and how long the exemption will be available;

> (4) the percentage of the cost of supporting the child(ren) borne by each parent;

> (5) the financial aid benefit for post-secondary education for the child(ren);

> (6) the financial burden assumed by each parent under the property settlement in the case; and

> (7) any other relevant factors[] (including health insurance tax subsidies or tax penalties under the Affordable Care Act).

Child Supp. G. 9.

[32]     Contrary to the trial court's determination, there is no rule that automatically affords the parent responsible for paying health insurance premiums with the benefit of claiming the child(ren) as dependents. As the parent who maintains

health insurance on the Children, Mother "receive[s] a health insurance credit in an amount equal to the premium cost the parent actually pays for [the Children's] health insurance" against her own child support obligation. *Ashworth v. Ehrgott*, 934 N.E.2d 152, 162 (Ind. Ct. App. 2010). Moreover, as Father points out, the Child Support Guidelines contemplate that the parent who pays health insurance premiums for the child(ren) may not be the parent who gets to claim the child(ren) for tax purposes. Specifically, in the commentary to Guideline 7, which concerns health insurance, it states that

> [p]roblems may arise if the parent who was ordered to provide health insurance fails to do so. The other parent may face a tax penalty under the Affordable Care Act if he or she claims the dependent tax exemption for the uninsured child.[1] The court should consider imposing sanctions against a parent who fails to provide health insurance as ordered or who fails to notify the other parent of changes in insurance status.

[33] During the hearing, neither party specifically requested the tax exemptions; thus, neither party demonstrated the consequences or benefits of being permitted to claim the Children. *See Lamon v. Lamon*, 611 N.E.2d 154, 159 (Ind. Ct. App. 1993). While it is generally presumed that the custodial parent will claim the children as dependents unless the court orders said parent to sign a waiver, here, the trial court was charged with making an initial custody

---

[1] The Child Support Guidelines note that "[o]nly the parent who claims a child as a dependent on a federal tax return is eligible for the subsidies [under the Affordable Care Act] and liable for the tax penalties." Child Supp. G. 9 cmt.

decision. *Id.* at 158 (citing 26 U.S.C. § 152(e)). Based on the evidence available, the trial court should have considered the factors set forth in Child Support Guideline 9 to determine which parent should receive the exemptions. We instruct the trial court to do so on remand.

## CONCLUSION

[34] Based on the foregoing, we conclude that the trial court abused its discretion by awarding primary physical and sole legal custody to Mother without a proper consideration of statutory factors. We further conclude that the trial court erred by including employer-paid health insurance premiums in its calculation of child support; however, evidence supports the trial court's finding that Mother incurs costs for two of the Children to be enrolled in daycare. Finally, we conclude that the trial court erred by failing to consider the factors set forth in the Child Support Guidelines for ascertaining which parent gets to claim the Children as dependents for tax purposes.

[35] Affirmed in part, reversed in part, and remanded.

[36] Pyle, J. concurs

[37] Robb, J. concurs with concurring separate opinion

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Paternity of Kyler S. Potoski, Riley N. Potoski, and Ellie R. Potoski | Court of Appeals Case No. 37A03-1704-JP-947 |
| Brent S. Potoski, | |
| *Appellant-Respondent,* | |
| v. | |
| Nicole Stotts, | |
| *Appellee-Petitioner.* | |

**Robb, Judge, concurring.**

[38] I concur, but write separately to emphasize the unique situation posed by a paternity case.

[39] When a child is born during a marriage, the parents are naturally the joint custodians of the child. For that reason, if the parents subsequently divorce, there is no presumption in favor of either parent when the dissolution court makes an initial custody determination. *See* Ind. Code § 31-17-2-8. However, when a child is born out of wedlock, the mother is sole legal custodian of the child by operation of law. Ind. Code § 31-14-13-1. There are many reasons for this, both practical and policy-based. Despite Father's assertion otherwise, and

despite the parties' long-standing relationship, the trial court was correct that Mother *did* have sole legal and physical custody of the children until these paternity proceedings were initiated.[2] Regardless of the parties' situation and practice in the years leading up to these proceedings, when paternity proceedings are initiated, a court must determine issues of support, custody, and parenting time in accordance with the law. Ind. Code § 31-14-10-1. Although by statute, custody of a child resides with the mother from birth, our legislature has also made it clear by statute that there is no presumption in favor of either parent during these initial proceedings in which a court for the first time makes a custody determination based upon the statutory factors. Ind. Code § 31-14-13-2.

[40] With that caveat, I agree with the majority that the trial court did not grant Father the equal footing to which he was entitled by statute and did not consider all of the statutory factors the legislature has directed be considered when a court awards custody for the first time. I therefore concur in the majority opinion.

[41]

---

[2] Mother filed a petition to establish child support in 2016 after the parties' relationship ended. Father then filed a petition seeking orders on custody and parenting time. As part of these proceedings, the parties stipulated to paternity and the trial court found as part of its March 27, 2017 order that Father was the father of each of the children. *See* Appellant's Appendix at 7.