Rita (Threlkel) QUINN, Appellant–
Petitioner,

v.

Robert A. THRELKEL, Appellee–
Respondent.

No. 55A01–0607–CV–314.

Court of Appeals of Indiana.

Dec. 20, 2006.

Andrew J. Baldwin, Baldwin & Roesener Law Office, P.C., Franklin, IN, Attorney for Appellant.

Brian H. Williams, Martinsville, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Rita Quinn appeals the trial court's order on her petition for modification of child support and for payment of college expenses from her ex-husband, Robert Threlkel, for their child, Elaine Threlkel. We affirm in part, reverse in part, and remand.

### Issues

The issues before us are:

I. whether the trial court's post-secondary education expense award is proper;

II. whether the court's order regarding abatement of Robert's child support obligation while Elaine is attending college is proper;

III. whether the court properly refused to make its order increasing Robert's support obligation retroactive; and

IV. whether the court properly ordered transfer of the tax exemption for Elaine from Rita to Robert.

### Facts

Rita and Robert were divorced in 1991. They had two children, one of whom was emancipated in 2002. After that child was emancipated, Robert's child support obligation was $48 per week. Elaine graduated from high school in 2005 and was to begin attending Franklin College that fall.

On June 8, 2005, Rita filed a petition requesting a modification of Robert's weekly child support obligation and a determination of responsibility for college expenses. The trial court never acted on this petition. It is believed that the petition was misplaced because the Morgan County courts were temporarily displaced from the courthouse at that time. On November 2, 2005, Rita re-filed her petition. The trial court then scheduled a hearing on the matter for February 16, 2006.

Before the hearing took place, Elaine incurred college expenses not covered by financial aid of approximately $6900 for the 2005–06 school year. Elaine's financial aid award from Franklin College included grants, scholarships, and work-study, as well as a Perkins Loan and a subsidized Stafford Loan totaling nearly $5500; Elaine took out the loans. Robert paid approximately $6000 towards Elaine's college expenses before the hearing. Elaine lived on campus during the 2005–06 school year, but Franklin College is not far from Rita's home, and Elaine frequently came home during the year. As of the time of the hearing, it was unclear whether Elaine was going to live on campus during the 2006–07 school year.

Robert works on commission and, therefore, his income varies widely from year-to-year. In 2003, he earned approximately $86,000, in 2004, $61,500, and in 2005, $100,000. Rita worked until April 2005, at a job that paid approximately $34,000 annually; her reported income for 2005 was approximately $10,000. At the time of the hearing she was still seeking new employment, but it was not absolutely necessary for her to do so because she had support from a new spouse.

During the hearing, Robert's attorney requested that "based on the disparate incomes in this to award the tax exemption for Elaine to the father ... for these upcoming years." Tr. p. 12. After a brief discussion, and without objection or any input from Rita's attorney, the trial court determined that Robert was entitled to the tax exemption for Elaine, beginning with the 2005 tax year.

Also during the hearing, the trial court chastised the parents at length for permitting Elaine to take out some student loans to help offset the cost of her education:

[L]et me make kind of a pointed comment here that I don't like. You two between the two of you are knocking down over a hundred thousand dollars . . . well in excess of a hundred thousand dollars and you're making your child take out student loans. That's atrocious. That's not fair to her. There is no reason she ought to have to strap herself for the next twenty years with a college loan, when you folks are making this type of income. With all the grants and scholarships she's making and then make her get out a student loan too, she is more than carrying her share of the load. It's almost like you are abandoning her. You're saying, "Oh yeah, you're so great, we're going to saddle you with twenty years of payments once you get out of school because you're such a good student, and I'm making so much money that I'm going to use it for myself and ignore my child?" That's not fair to her folks. I agree Franklin College is expensive. There is no question about it. It's probably more than double the tuition of IU or Ball State . . . . uh-uh, that is not going to happen with you two with your potential incomes any more. She will not have to do that carrying a 2.9 at Franklin and having these scholarships and grants, no.

*Id.* at 13–14. Later, the trial court stated, "I didn't saddle my kids with loans, so I didn't even explore them." *Id.* at 19. In its order, the trial court not only forbade Rita and Robert from allowing Elaine to take out any more student loans, it also required them to repay the loans she already had taken out.

The trial court also stated at the hearing that it was not going to follow the Indiana Supreme Court's Child Support Guidelines, Commentary, and accompanying Post–Secondary Education Worksheet regarding reducing a weekly child support obligation, pro rata, based upon a child living on campus during the school year:

[T]hat's where we'll stop on the worksheet. I don't think that giving advance credit for post-secondary education worksheet [sic] is appropriate with children the way they are today, and their lack of staying at home once they've become college bound. I find that from the Court's own experience in observing other people's college kids, they don't come home. They get into a co-op program. They find an intern job. They go off to the boyfriend's for a week . . . they go to their Sorority Sister's, their roommates house for a week or two . . . a lot of different things such that they're not home, thank God. And the Supreme Court's adoption I think is ill conceived and is inappropriate . . . support will apply for every seven days that the child is out of school and is actually home because she is not in school.

*Id.* at 15–16. The trial court also stated that Robert would not be responsible for child support while Elaine was in school, even if she did frequently come home during that time.

The trial court's order also provided that Robert's non-prorated weekly child support obligation would increase to $198, which would not be made retroactive. It also determined that Robert would be responsible for 71% of Elaine's college expenses and Rita 29%. It further required Rita to partially reimburse Robert for some of the payments he had made for the 2005–06 school year that exceeded 71% of unreimbursed costs. Rita now appeals.

## Analysis

As a general matter, child support awards comporting with the Indiana Child Support Guidelines bear a rebuttable presumption of correctness. *In re Paternity of C.R.R.*, 752 N.E.2d 58, 61 (Ind.Ct. App.2001). If the trial court finds that the Guidelines are unjust or inappropriate in a particular case, the court may enter a support award that is deemed appropriate. *Id.* "A deviation must be supported by proper written findings justifying the deviation." *Id.*

Decisions regarding child support generally fall within the sound discretion of the trial court. *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind.Ct.App.2006). Reversal of a trial court's child support order is merited only where the determination is clearly against the logic and effect of the facts and circumstances before the court. *Id.* On appeal, we will consider only the evidence and reasonable inferences favorable to the judgment. *Id.* We also bear in mind that although a trial court has broad discretion to tailor a child support award in light of the circumstances before it, "this discretion must be exercised within the methodological framework established by the guidelines." *McGinley–Ellis v. Ellis*, 638 N.E.2d 1249, 1251–52 (Ind.1994). This principle applies with equal force to orders regarding post-secondary education expenses. *See Carr v. Carr*, 600 N.E.2d 943, 946 n. 3 (Ind. 1992).

### I. Post–Secondary Education

We first address the trial court's post-secondary education expense order. With respect to that order, we conclude that it is necessary to remand for clarification and reconsideration.

Recently, we held that we could not adequately review the trial court's child support order where the parties had not submitted verified child support worksheets and the trial court had not entered adequate findings to justify and explain its order. *Payton*, 847 N.E.2d at 253–54. Thus, we remanded for the trial court to enter more complete findings or to obtain and adopt a party's verified child support worksheet. *Id.* at 255.

We have the same difficulty in the present case. A multitude of considerations impact a decision to order an award of post-secondary education expenses. Indiana Code Section 31–16–6–2(a)(1) provides that an award of such expenses should take into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

   (i) work;

   (ii) obtaining loans; and

   (iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses;

The Child Support Guidelines' commentary on post-secondary education expenses further states:

[T]he court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration

scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student.... A consideration of the foregoing factors is addressed in the Worksheet on Post–Secondary Education Expense *which should be utilized in making a fair distribution of this expense.*

Ind. Child Support Guideline 6, cmt. (emphasis added). The commentary also suggests that courts "may limit consideration of college expenses to the cost of state supported colleges and universities or otherwise may require that the income level of the family and the achievement level of the child be sufficient to justify the expense of private school." *Id.*

Similar to the situation in *Payton*, the trial court here neither obtained and adopted a party's verified post-secondary education expense worksheet, nor did it make findings paralleling the worksheet. Instead, the court made general findings to the effect that Rita should pay 29% of college expenses and Robert 71%, that they would have to repay student loans Elaine had already taken out using that same percentage split, and that Elaine was forbidden from taking out any additional student loans, "given the parties' incomes and resources available to pay for the child's education." App. pp. 10–11. There are no findings in the record regarding the estimated cost of attending Franklin College, what percentage of that cost should be borne by Elaine, and what type of financial aid she is expected to receive. Indeed, there is no requirement in the trial court's order that Elaine apply for financial aid of any kind. That alone makes the trial court's current order inadequate. *See Carr*, 600 N.E.2d at 946 (reversing trial court's post-secondary education expense order where it did not place any responsibility on the student to actually seek grants, loans, or employment).

Additionally, the trial court did not adopt any worksheet submitted by the parties. Only one worksheet was introduced into evidence, and it was not verified. It also is inadequate in that it breaks down Elaine's financial aid only into "scholarships" and "other." Under the category for the child's share of costs, the worksheet has lines for scholarships, grants in aid, student loans, child's cash share, and "other." Elaine evidently qualified for and accepted financial aid for the 2005–06 school year in the form of scholarships, grants, student loans, and work-study. Neither the proffered worksheet nor the trial court's findings acknowledge this. The trial court's order also makes no mention of the fact that Elaine is attending a private college and the much higher expense that entails, although the trial court did briefly recognize this fact during the hearing. In sum, we conclude that remand is necessary for the trial court to either adopt a verified, properly completed post-secondary education expense worksheet submitted by one of the parties, or to enter its own findings based on the requirements of the worksheet. *See Payton*, 847 N.E.2d at 255.

We also note that the trial court's scolding of Rita and Robert for "allowing" Elaine to take out modest loans to invest in her own education was inappropriate. The Department of Education, in conjunction with universities, makes an initial determination as to whether a child is eligible for financial aid, including loans, after taking into account parental financial resources. After applying for financial aid, Elaine was awarded a package that included a few thousand dollars in Perkins and subsidized Stafford Loans. These loans are awarded on the basis of "need"; unsubsidized Stafford Loans may be taken out without showing "need," but the subsi-

dized variety cannot. *See* http://www.fafsa.ed.gov/faq003.htm (last visited Dec. 13, 2006). If the Department of Education and Franklin College together determined that Elaine had a "need" for student loans, it cannot be said that allowing her to accept those loans was "atrocious" or poor parenting on the part of Rita (and Robert, for that matter). Tr. p. 13. We further note that part of the consideration of whether to require or "allow" a student to take out some student loans to help pay for college education ought to include an estimation of how much it likely will cost the student to repay the loans after graduation. This can easily be done on the Department of Education's website.[1]

On remand, we direct the trial court to reconsider its absolute prohibition against Elaine taking out any loans to help pay for her education at a private school, and especially its requirement that the parties repay the loans she already took out during the 2005–06 school year. Those loans total approximately $5500, which would be a very modest burden on Elaine upon her graduation.[2] Moreover, our supreme court has reversed college support orders that have failed to take into account the student's ability to receive student loans. *See Carr,* 600 N.E.2d at 946. "The guidelines and the statute contemplate that these cost-reducing measures will be factored in to college expense orders where their potential is raised by the record." *Id.* With these observations, we remand for clarification and further consideration of the post-secondary education expense order.

## II. Child Support Abatement

■ Next, we address the manner in which the trial court accounted for Elaine living on campus rather than at Rita's home while she is attending college. Indiana Child Support Guideline 3(G)(1) states, "If the parents have a child who is living away from home while attending school, his or her child support obligation will reflect the adjustment found on Line J of the Post–Secondary Education Worksheet (*See* Support Guideline 6 Commentary entitled Extraordinary Education Expenses)." That commentary, explaining how to use the Post–Secondary Education Worksheet, states in part: "Section Two determines the amount of each parent's weekly support obligation for the student who does not live at home year round. *The amount attributable to the student while at home has been annualized to avoid weekly variations in the order.*" (Emphasis added). The Post–Secondary Education Worksheet essentially provides that where, as here, there is only one child entitled to support, the number of weeks the student lives at home during a year is divided by fifty-two, and the resulting percentage is multiplied by the obligor parent's regular weekly child support obligation. This figure results in a weekly child support obligation, pro-rated on an annual basis to account for the child living on campus for some of the year.

The trial court chose to ignore this formulation. Instead of multiplying Robert's basic weekly child support obligation of $198 by the percentage of weeks Elaine would be expected to live at Rita's during the course of the year, the trial court

---

1. *See* http://www.ed.gov/offices/OSFAP/Direct Loan/RepayCalc/dlentry1.html (last visited Dec. 13, 2006).

2. Using the Department of Education's calculator, repayment of this loan at current Stafford Loan interest rates under standard terms would require ten years of monthly payments of approximately $63. Furthermore, approximately half of this loan amount was a Perkins Loan, which has lower rates than Stafford Loans.

simply ordered Robert to pay the $198 for any week Elaine happened to be at home for seven days. The trial court's order regarding when Robert must pay child support is in violation of our supreme court's duly adopted guidelines, commentary, and worksheets governing postsecondary educational expenses. It also has the potential to lead to future disagreements and litigation between Rita and Robert regarding whether and when he must pay the child support. In a worst-case scenario, Elaine could become the center of a tug-of-war between Rita and Robert, with Rita wanting Elaine to come home so she could receive the child support and Robert wanting the opposite. The trial court stated that it believed the supreme court's guidelines, commentary, and worksheet are "ill conceived and ... inappropriate," based on the court's "own experience in observing other people's college kids, they don't come home." Tr. p. 15. Although we appreciate the trial court's observation and life experience, the guidelines should have been followed.

Alternatively, the trial court could have expressed reasons why, *in this particular case*, it would be unreasonable to follow the guidelines, commentary, and worksheet. *See Matter of Paternity of T.W.C.*, 645 N.E.2d 1128, 1130 (Ind.Ct.App.1995) (holding that deviation from recommendations of Child Support Guidelines commentary should be supported by specific findings explaining the deviation). There is no such explanation here. Instead, as expressed at the hearing (but not in the final order), the trial court relied on general facts not in evidence that do not concern Elaine as a basis for not following the guidelines, commentary, and worksheet. That was improper. There was no evidence that Elaine did not return home for extended periods of time when she was not attending classes at Franklin College. To the contrary, there was undisputed evidence presented that Elaine in fact made frequent visits to Rita's home even while classes were in session, due to its close proximity to Franklin College.

Our supreme court obviously considered it important for there to be a consistent payment of weekly child support in some amount, even if a child is living outside the custodial parent's home for extended periods of time. It clearly wanted "to avoid weekly variations in the order," which is precisely what the trial court's current order does *not* avoid. We also observe that elsewhere, the guidelines allow for abatement of child support for extended visitation by the noncustodial parent, but such abatement cannot exceed 50% of weekly support order. Our supreme court explained that this rule "recognizes that the custodial parent has ongoing expenses in maintaining a year-round home for the child that do not abate during periods of visitation." *See* Child.Supp. G. 6, cmt. The same rationale applies to children in college who live on campus part of the year and at home other times; the rationale would seem to apply with especial force in a case such as this one, where the child lives on campus but still very near to the custodial parent's home and trips home are frequent.

We reverse and remand with instructions for the trial court to recalculate Robert's weekly child support obligation, after applying the appropriate child support guidelines, commentary, and worksheets, and consideration of the approximate number of weeks Elaine spends at Rita's house during the course of a year. Such recalculation will result in a pro-rated child support obligation that Robert must pay on a weekly basis, without consideration of whether Elaine is actually staying at Rita's home that week. We note that on remand, the parties should be able to provide evidence as to whether Elaine is living on

campus during the current school year, which was unclear at the time of the previous hearing. We do agree, however, with the trial court to the extent that Robert should not be asked both to contribute to room and board costs at Franklin College and not receive an abatement from child support for making such a contribution, regardless of whether Elaine frequently visits Rita at her home.

### III. Retroactivity of Support Modification

■■■ Next, we address Rita's argument that the trial court erred in not making the increase in Robert's child support obligation retroactive at least to the November 2, 2005 date on which she filed her child support modification request for the second time. It is within a trial court's discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date thereafter. *Carter v. Dayhuff*, 829 N.E.2d 560, 568 (Ind.Ct.App.2005). We will reverse a decision regarding retroactivity only for an abuse of discretion or if the trial court's determination is contrary to law. *Haley v. Haley*, 771 N.E.2d 743, 752 (Ind.Ct.App. 2002). However, "modifications normally speak only prospectively." *Talarico v. Smithson*, 579 N.E.2d 671, 673 (Ind.Ct. App.1991). "Allowing trial courts discretion in making the modification of child support effective as of the date the petition is filed may serve to avoid dilatory tactics." *Id.* at 673–74.

There is no evidence of any dilatory tactics on Robert's part with regard to Rita's child support modification request. In fact, the only evidence is that Robert has been cooperative throughout these proceedings, and voluntarily helped pay for Elaine's college education before the trial court issued an order requiring him to do so.

Additionally, to the extent Rita argues that she (or Elaine, actually) was deprived of a large amount of child support because Robert's weekly obligation was found to have increased from $48 to $198, that argument is incorrect. As noted in Part II of this opinion, Robert's weekly support obligation must be pro-rated to account for Elaine living on campus for much of the year. When that is taken into account, it is unclear what Robert's weekly support obligation will be; it could equal or even conceivably be less than $48 per week. Robert voluntarily helped pay for Elaine's college expenses, including room and board, before the trial court entered this order, plus he continued paying the pre-existing child support order of $48 per week. Given the circumstances, we cannot say the trial court abused its discretion in ordering the "increase" in Robert's weekly child support obligation, if indeed it is an increase, from operating prospectively only.

### IV. Tax Exemption

■■ Finally, we address Rita's claim that the trial court erred in requiring her to allow Robert to claim Elaine as a dependent for the year 2005 and thereafter on his tax returns. The federal tax code automatically grants to a custodial parent the dependency exemption for a child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year. *Harris v. Harris*, 800 N.E.2d 930, 940 (Ind.Ct. App.2003), *trans. denied*. A trial court under certain circumstances may order the custodial parent to sign a waiver of the dependency exemption. *Id.* A decision regarding the dependency exemption falls within the trial court's "equitable discretion." *Lamon v. Lamon*, 611 N.E.2d 154, 159 (Ind.Ct.App.1993).

■■ Rita's primary complaint regarding the exemption is that she had peti-

tioned for payment of college expenses and modification of Robert's child support obligation, while Robert had never formally requested transfer of the exemption, which Rita previously had always claimed for Elaine. However, it is clear under Indiana Trial Rule 15(B) that the issues of a case are not necessarily determined by the pleadings, but can be altered by the evidence adduced at trial and the implied consent of the parties. *Sutton v. Sutton,* 773 N.E.2d 289, 295–96 (Ind.Ct.App.2002).

Here, during the hearing, counsel for Robert stated, "we are also asking the Court ... based on the disparate incomes in this to award the tax exemption for Elaine to the father...." Tr. p. 12. Robert reiterated this request towards the end of the hearing. At no time did Rita object to placing the issue of the tax exemption before the trial court. This was not, as Rita suggests, an instance in which the trial court sua sponte transferred the exemption to Robert. We cannot say the trial court erred in considering Robert's request regarding the exemption, where Rita failed to object to it doing so.

■ Rita does not develop an argument on the merits of the tax exemption issue. However, we note that there are at least five factors for trial courts to consider when deciding whether to order a release of an exemption:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

(5) the financial burden assumed by each parent under the property settlement in the case.

*Glover v. Torrence,* 723 N.E.2d 924, 938 (Ind.Ct.App.2000) (quoting Child.Supp. G. 6, cmt.).

Here, Robert obviously earns considerably more than Rita. We need not disregard what we know about the federal tax code's progressive rate scheme; it is apparent that the exemption likely is worth considerably more to Robert than Rita, whose reported $10,000 income in 2005 might have been completely exempt from federal taxation after claiming a personal exemption and standard deduction. *See Skinner v. Skinner,* 644 N.E.2d 141, 149 (Ind.Ct.App.1994). Robert also has been assigned 71 % of the burden of supporting Elaine, versus 29% for Rita. Elaine will not be a dependent for tax purposes for much longer. The parties were divorced fifteen years ago, and so the financial burden of the property settlement does not appear to be relevant at this point in time. When considering all of these circumstances, we cannot say the trial court abused its discretion in directing that Robert be permitted to claim Elaine as a dependent on his tax returns.

We also do not believe it was improper to require Rita to allow Robert to claim Elaine as a dependent on his 2005 tax year return. It is true, as Rita notes, that the trial court did not order any change in Robert's weekly child support obligation to be effective retroactively to 2005. It did, however, essentially make its post-secondary education expense order retroactive, by requiring Robert to pay for 71% of Elaine's college expenses that she had already incurred for the 2005–06 school year. As noted earlier in this opinion, Robert had already assisted with those expenses voluntarily, while simultaneously continuing to pay his previous weekly child support obligation. We cannot say it was an abuse of discretion to allow Robert to

claim Elaine as a dependent on his 2005 tax return.

### Conclusion

We remand for further consideration and clarification of the post-secondary education expense order in this case in proceedings consistent with this opinion. We also reverse the trial court's current formulation of Robert's child support obligation and remand for recalculation consistent with our supreme court's guidelines, commentary, and worksheets. We affirm the trial court's decisions regarding the non-retroactivity of the modification of Robert's child support obligation and the dependent tax exemption for Elaine.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and VAIDIK, J., concur.