In re the MARRIAGE OF Ronald
HENSLEY, Appellant–
Respondent,

v.

Melissa HENSLEY, Appellee–
Petitioner.

No. 15A01–0610–CV–476.

Court of Appeals of Indiana.

June 29, 2007.

**911**

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

John B. Norris, Hass, Vandivier & Norris, Franklin, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Ronald Hensley appeals the modification of his support obligation for two daughters born during his marriage to Melissa Bales.[1] He alleges the court placed an excessive obligation on him.[2] We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Hensley and Bales have two daughters: M.H. was born on June 7, 1985, and S.H. was born August 7, 1986. They were divorced in 1989, when the girls were three

1. After Melissa divorced Ronald, she remarried and her surname became "Bales." To avoid confusion, we refer to Ronald as "Hensley" and to Melissa as "Bales."

2. Hensley also raises a number of challenges to the sufficiency of the evidence, including whether Bales presented sufficient evidence to demonstrate the actual cost of M.H.'s expenses while living off campus, to demonstrate S.H.'s expenses, and to demonstrate Bales mortgaged her home to cover college costs. However, the trial court was required

and four years old, and Bales was given custody. In 1992, an agreed entry set Hensley's child support for both girls at $150 per week. Neither the agreed entry nor any previous order mentioned college expenses.

On May 5, 2003, Bales filed a motion to modify support because M.H. was to attend Ohio State University in the fall. The hearing was scheduled for February 25, 2004, but was not held because Hensley failed to appear.[3] Bales then filed a second motion to modify support on August 2, 2004, when S.H. was to begin attending St. Louis University. The court held a hearing on both petitions on August 16, 2005.

On September 18, 2006, the trial court modified support in an order that included the following Findings and Conclusions:

9. [Bales] testified that she is voluntarily unemployed and has been for a number of years. Therefore minimum wage has been inputed [sic] to [Bales] on the Indiana Child Support Guidelines. [Bales] has one (1) subsequent child. The Court finds that [Bales] could work and has no disabilities and probably is under employed at the level of a minimum wage job.

10. [Hensley] has two subsequent children and income of one thousand two hundred eighty six dollars and eighty seven cents ($1286.87) per

to find facts based on the evidence in the record. As Hensley submitted no evidence regarding those costs or the absence of "new" mortgages on Bales' home, he cannot be heard to complain the court erred by relying on the only evidence available.

3. The record does not make clear why Hensley failed to attend the hearing, although there is some suggestion he did not receive notice. In any event, no hearing occurred on the first petition until after the second petition was filed.

week that includes some overtime, but this weekly figure is less than the total income/year to date divided by the number of weeks for 2005.

11. [Hensley]'s check shows a garnishment of $150.00 per week for these children and $294.00 per week for subsequent born children by a second marriage. [Hensley] admits he has reconciled with the second wife and that money garnished for the subsequent born children is being returned to the family.

12. College expenses are discretionary with the Court. The Court is basing its decision on the parties['] abilities to pay. [Hensley] should be required to pay some of his children's college expenses.

13. It appears that [Hensley] had no input into where the children went to school. It also appears from the record that there was no hearing on the motions to modify until August 2005. Considering the lack of communication by both parties and both children, [Hensley] is ordered to pay past college expenses beginning in the college years 2004 and 2005 when he would have had notice and the opportunity to make objections and to enter into discussions.

14. [Bales] submitted exhibits showing book fees and expenses to attend Ohio State for one year was $19,227.00. The Court roughly apportions to the student one-third of the costs for attending a state school which cost would be $6,409.00 based upon the evidence presented considering loans, scholarship awards and ability to work. The total left would be the responsibility of the parents pursuant to the guidelines or $12,818.00 for each child. The Court may limit expenses to state supported colleges and universities.

15. [Hensley]'s responsibility would be 86% of the final expenses for each child after apportionment to the children of one third for years 2004 and 2005and [sic] continuing until each child completes four years.

16. [Hensley] would owe [Bales] reimbursement for those expenses totaling $22,046.00 for the 2004–2005 year minus any overpayment for child support. [Hensley] would owe at least an equal amount for the 2005–2006 and 2006–2007. In the years 2007 and 2008 [S.H.] would be the only student and [Hensley] would owe a minimum of $11,023.00 for each child. Excess amount over child support that is due should be credited toward college expenses.

17. Considering two subsequent children, [Hensley's] obligation for child support would be $191.50 and would be made retroactive to the date the first petition to modify was filed which was May 5, 2003.

18. Considering two subsequent children, [Hensley's] child support obligation would be $76.60 per week with that amount being retroactive to the date of second petition or August 2, 2004.

19. [Hensley's] arrearage as of August 2, 2004 would be $2,697.50 and [Hensley's] overpayment as of August 16, 2005 was $3,963.60. This leaves an over-payment as of August 16, 2005 of $1,266.10. Any overpayment that is paid above shall be applied to college expenses previously due.

20. [Hensley] has been paying $150.00 per week since August 2nd, 2004 and continuing. Each payment would be an over-payment of $73.40 per week or $3,816.60 for the year to be credited against [Hensley's] required college expenses.

21. Respondent may pay weekly toward college expenses and any amount over $76.60 would be credited to college expenses owed.

22. The Court considers the following amount as [Hensley's] expenses for college based upon the evidence given until substantial changes occur or until further order of this Court.

2004–2005 [M.H.] and [S.H.] = $11,023.00 + $11,023.00

23. [Hensley] has not paid any expenses for the first two years and [Bales] has contributed all expenses by mortgaging her house.

24. [Hensley] would owe [Bales] $22,046.00 minus $1,266.10 overpayment on child support for college expenses through August 16, 2005 for a total of $20,779.90 for the years 2004 and 2005. That amount would be paid to [Bales].

25. College expenses would continue to accrue each year at least in amounts already stated and [Hensley] would be responsible for 86% based upon income guidelines until further order of this Court.

26. [Hensley] would be responsible for reimbursing [Bales] in the amount of $20,779.90 within three years from the date [S.H.] completes her undergraduate degree.

**IT IS THEREFORE ORDERED AND ADJUDGED THAT:**

1. [Bales'] first and second Motion for Modification are hereby granted.

2. That [Hensley's] weekly child support as of May 5, 2003 until August 2, 2004 should be $191.50.

3. That [Hensley's] weekly child support obligation as of August 2, 2004 is $76.60 and continues until further order of this Court.. [sic]

4. [Hensley] has overpaid support by the amount of $1,266.10 as of August 16, 2005. This amount should be ordered against college expenses owed to [Bales].

5. [Hensley] owes $20,779.90 to [Bales] for college expenses in years 2004 and 2005 and shall reimburse [Bales] within 3 years from the date [S.H.] graduates, as long as she graduates within four years.

6. College expenses would continue to accrue to [Hensley] each year in the amount of $11,023.00 per child per year in school until each child finishes four years of college or until further order of this Court.

7. [Hensley] is responsible for 86% of college expenses after a reduction of one third attributed to the children until they complete 4 years or until further order of this Court.

(Appellant's App. at 10–14.)

## DISCUSSION AND DECISION

█ We review a trial court's apportionment of college expenses for clear error. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind. 1992). Accordingly, we will affirm the judgment unless it "is clearly against the logic and effect of the facts and circumstances which were before" the court. *Id.*

Regarding support orders for college expenses, our legislature has provided:

(a) The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses. . . .

Ind.Code § 31–16–6–2.

In addition, the commentary to the Child Support Guidelines explains:

The data upon which the Guideline schedules are based include a component for ordinary educational expenses. Any extraordinary educational expenses incurred on behalf of a child shall be considered apart from the total basic child support obligation.

Extraordinary educational expenses may be for elementary, secondary or post-secondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.

\* \* \* \* \*

b. Post–Secondary Education. The authority of the Court to award post-secondary educational expenses is derived from IC 31–16–6–2. It is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

If the Court determines that an award of post-secondary educational expense is appropriate, it should apportion the expenses between the parents and the child, taking into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These sources of assistance should be credited to the child's share of the educational expense.

\* \* \* \* \*

The court may limit consideration of college expenses to the cost of state supported colleges and universities or otherwise may require that the income level of the family and the achievement level of the child be sufficient to justify the expense of private school.

Commentary, Child Support Guideline 6 (1998).

■ The trial court limited college expenses for each daughter to the cost of attending Ohio State as an in-state student, which the court determined to be $19,227 per year. The court also assigned to each daughter one-third of her in-state student expenses, which is $6,409 per year. These two decisions were clearly within the court's discretion. *See id.*

■ After finding Hensley's income to be $1,286.87 per week and Bales' income to be $210 per week, the court ordered Hensley to be responsible for 86% of each child's remaining $12,818 in yearly college

expenses.[4] Thus, the court required Hensley to pay $11,023 in college expenses for each daughter per year. Because Ind. Code § 31–16–6–2(C) requires the trial court to take into account "the ability of each parent to meet" the educational expenses required for college, the evidence in the record demonstrates this division of college expenses between Hensley and Bales was clearly erroneous.

Hensley is an over-the-road truck driver who works nights to receive a shift differential, such that his hourly pay is $19.05. The paycheck submitted indicates Hensley worked 62.17 hours in the week he earned $1,286.87.[5] Hensley testified he is guaranteed forty hours of work per week, but receives overtime based on the amount of work available.

The court followed Bales' suggestion to impute income to her at minimum wage, $5.25 per hour, and thus set her weekly income at $210. Bales had been "unemployed formally," (Tr. at 31), for four years because her current husband's income allows her not to work. However, when asked what she did during the day, Bales explained:

> Well um I help my brother with his business so hopefully someday in the future I will be employed with him. I help out another friend with his business and sometimes he'll pay me some but not a whole lot. Maybe so far to date he's paid me $1,000 this year which

would be in the form of a 1099 as expense for him that's it.

(*Id.* at 19.) This evidence supports the trial court's conclusion Bales could work, has no disabilities, and "probably is under employed at the level of a minimum wage job." (Appellant's App. at 11.) Nevertheless, the trial court imputed only $210 per week to Bales.

Based on these income levels, the trial court determined Hensley would be responsible for 86% of the educational costs for each child, or $11,023 per child per year. The trial court's order imposes on Hensley an additional $211.98 per child per week[6] for college expenses, or $423.96 per week for both M.H. and S.H. The trial court modified the child support garnishment order for M.H. and S.H. from $150 per week to $76.60 per week, a decrease of $73.40 per week. Thus, Hensley's total support obligation for M.H. and S.H. increased $350.56 per week.

Hensley's pay stub indicates his net pay was $432.26 after taxes, deductions, and child support garnishments. Thus, the trial court's modification order reduces Hensley's net pay to $81.70 per week. Hensley has a second wife, two children born of that marriage, and a mortgage on the mobile home where he lives with his family.[7] A child support garnishment of $294 per week for these two children was being returned to the family. Assuming the

---

4. $1,286.87 is 85.97% of the total income, $1,496.87.

5. We do not deny Hensley's year-to-date income on the paycheck indicated his gross income was $25,742.79 in the first seventeen weeks of 2005, which is an average gross weekly income of $1,514.28. Nevertheless, the court found his income to be $1,286.87, and as that finding is not clearly erroneous, we consider it his income for the remainder of our analysis.

6. $11,023 divided by 52 weeks equals $211.98 per week.

7. After his divorce from Bales, Hensley remarried and had two children with his second wife. They later divorced. Hensley's pay stub indicates a child support garnishment was in place. At the time of the hearing, Hensley and his second wife had reconciled and were living as a family.

child support garnishment sufficiently provides for these two children, Hensley must support himself on less than $4,300 per year.

The court also ordered Hensley reimburse Bales for more than $60,000 in past college tuition. Hensley testified his house and property were worth less than the mortgage he has on them, such that he would be unable to obtain money by refinancing his home. While Bales suggested Hensley obtain federal PLUS loans to reimburse her,[8] it is not clear he would be able to obtain those loans at this late date, when the tuition and fees have already been paid to the universities.[9] When asked if he had any way to pay Bales $61,000, Hensley testified, "No not that I'm aware of. Unless $50 bills come out of the sky. No I don't have any other way to pay for that." (Tr. at 48.) Accordingly, the record does not contain evidence suggesting Hensley would be able to obtain loans to reimburse Bales for more than $60,000 in past tuition.[10]

When dividing college expenses, the trial court must take into account "the ability of each parent to meet" the educational expenses required for college. Ind.Code § 31–16–6–2(C). Our calculations indicate Hensley will be unable to provide for himself or his family under this educational support order, while Bales will be permitted to remain unemployed and have money returned to her.[11] Consequently, it is not clear the trial court, when fashioning this order, properly considered the parents' abilities to meet college expenses. We conclude the result reached is inequitable and unjust.

As a final matter, we stress that this case is not about a father who is unemployed or underemployed. Nor is it about a parent who amassed a huge support arrearage by failing to pay support for a number of years. Before Bales sought to modify support to include college expenses, Hensley was current in his child support payments. He works nights to make more money per hour, and he al-

---

8. PLUS loans are low-interest rate loans available to cover education expenses for parents whose dependent child is an "undergraduate student enrolled at least half time in an eligible program at an eligible school." PLUS Loans (Parent Loans) available at http://www.stud entaid.ed.gov/PORTALSWebApp/students/English/parentloand.jsp# 03 (last visited April 24, 2007).

9. According to the federal Student Aid website, the PLUS loan money is sent directly to the school. The school disburses half each semester. The funds "will first be applied to your tuition, fees, room and board, and other school charges." PLUS Loans (Parent Loans) available at http://www.studentaid.ed.gov /PORTALSWebApp/students/English/parentloand.jsp# 03 (last visited April 24, 2007). Then, remaining loan funds will be sent to the parents, released to the student, or placed in the student's school account. *Id.*

10. Nor does it appear Hensley could save that much money. The court's order makes the

money due to Bales within three years after S.H. completes four years of college. In order to save $60,000 between September 18, 2006, and May of 2011, Hensley would need to save approximately $250 per week ($60,-000 / 240 weeks = $250/week) in addition to the $423.96 per week he was ordered to pay for on-going child support and college expenses. Meeting such an obligation appears impossible in light of Hensley's hourly wage and the number of hours available to work.

11. The trial court's decision to impute only minimum wage to Bales when she is willfully unemployed and, by the court's own finding "under employed at the level of a minimum wage job," (Appellant's App. at 10), requires Hensley to shoulder the lion's share of M.H. and S.H.'s college expenses. In fact, under this order, Hensley is required to pay 57 percent of his daughters' college expenses while Bales pays only 9 percent.

ready works more than 60 hours per week to support himself and his four children. He cannot be expected to do any more. The current order effectively penalizes Hensley for working overtime, while rewarding Bales for remaining unemployed.

Because our examination of the record leaves us with the firm conviction a mistake has been made, we reverse and remand for the court to enter a new order based on the evidence already before it.

Reversed and remanded.

SHARPNACK, J., and BAILEY, J., concur.