## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 17 2017, 6:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
Elkhart, Indiana

ATTORNEY FOR APPELLEE

Elizabeth A. Bellin
Elkhart, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher A. Toth, <br> *Appellant-Respondent,* <br><br> v. <br><br> Julia Lynne Noblitt, <br> *Appellee-Petitioner* | October 17, 2017 <br><br> Court of Appeals Case No. <br> 20A03-1705-DR-1030 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable David C. Bonfiglio, Judge <br><br> Trial Court Cause No. <br> 20D06-0508-DR-629 |

**Altice, Judge.**

### Case Summary

[1]     In his third appeal in just over a year, Christopher A. Toth (Father) appeals from the trial court's order requiring him to pay a portion of his daughter A.T.'s postsecondary educational expenses (college expenses) and the attorney fees of

his former wife Julia L. Noblitt (Mother). Father also appeals the denial of his motion to modify child support with respect to his disabled adult daughter K.T.

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History

[3] Father and Mother's marriage was dissolved in November 1998. They have two daughters, K.T., born in November 1993, and A.T., born in June 1995. Although the parties initially shared joint legal custody, such was terminated by the court in 2003. In that order, the trial court awarded Mother legal custody of the children, as well as primary physical custody. Father was found in contempt on May 24, 2004, for nonpayment of school expenses and shortly thereafter found to be almost $4000 in educational arrears.

[4] In June 2006, K.T. was struck by lightning while boating with Father. K.T. suffered catastrophic injuries, including permanent brain damage. K.T.'s physical and mental disabilities require around-the-clock care and have resulted in Mother being unable to work. This unfortunate change in circumstances also led to years of additional litigation.

[5] On August 22, 2008, the trial court modified Father's support obligation by increasing it from $127 to $274 per week. The court refused to impute income to Mother, finding that "Mother's loving care of a highly disabled child cannot be duplicated by a paid, in-home provider" and that Mother was not staying home with K.T. to avoid supporting the children. *Appendix Vol. II* at 63.

Father's support obligation took into account the parties' stipulation that Father would receive a credit for 166 overnights with the children, even though he had not had an overnight with K.T. since the accident. In the same order, the trial court noted the parties' stipulation that Father was in arrears for educational expenses in the amount of $7300.

[6] Father filed a motion to correct error, which was granted in part on December 5, 2008. The trial court spent much of its order addressing and upholding its decision not to impute income to Mother. The court emphasized that Mother's not working was not a choice but was rather compelled by the needs of K.T. The trial court then corrected a mathematical error and recalculated Father's weekly support obligation to be $246. In March 2009, another calculation error was corrected, resulting in the support obligation being set at $261, where it remained for several years. On June 8, 2009, the trial court entered judgment against Father for unpaid child support in the sum of $5851.

[7] In October 2013, Father moved to Florida, and Mother filed a motion to determine the amount of his arrears with respect to medical expenses, educational expenses, and child support. After a number of continuances, Mother filed a supplement to her motion in November 2015. Following an evidentiary hearing, the trial court issued an order on May 6, 2016, in which it initially observed:

> There have been numerous proceedings over the years, but the Court Orders on August 22, 2008 and December 5, 2008 are attached and incorporated because of their significance. They are

significant here because the issues before the court on this occasion: medical, educational and support arrears may have different facts then [sic] prior evidentiary trials, but father's approach remains the same; that is, undervaluing the care mother continues to give to their disabled child, not wanting to pay his fair share of the costs of her overall condition and attempting to minimize his financial exposure for their second born child.

*Id.* at 132. Ultimately, the trial court ordered Father to pay $17,526 for unreimbursed medical expenses from the years 2006 through 2015, $6689 for educational expenses from 2008 to 2015, and Mother's attorney fees in the amount of $16,250. The trial court also noted that Father had paid no part of the principal or interest on the 2009 judgment for unpaid child support.

[8] Father appealed from the trial court's May 6, 2016 order. Another panel of this court issued a memorandum decision affirming the award of medical expenses and attorney fees, reversing the award of educational expenses, and remanding for a determination of what portion of the award related to expenses for A.T.'s secondary education as opposed to college. *Toth v. Noblitt*, No. 20A03-1609-DR-2240 (Ind. Ct. App. June 14, 2017) (*Toth I*).

[9] While Father's first appeal was pending, the trial court granted Mother's request for an award of appellate attorney fees. Specifically, on December 9, 2016, the court ordered Father to pay reasonable attorney fees to Mother's appellate counsel, which it estimated would be $4000 to $4500. Father appealed from this order, which was affirmed by another panel of this court. *Toth v. Noblitt*, No. 20A03-1701-DR-48 (Ind. Ct. App. August 9, 2017) (*Toth II*).

[10]     In the meantime, Father filed a motion to modify support on March 23, 2016, based on A.T. having reached the age of nineteen. On April 4, 2016, Mother filed a petition for college expenses, noting that A.T., though still living with Mother, was currently a student at Indiana University at South Bend. On December 8, 2016, Mother filed a motion for reimbursement of medical expenses.

[11]     On February 24, 2017, the trial court held an evidentiary hearing on all pending issues and then took them under advisement. In support of the request for attorney fees, Mother's attorney submitted an affidavit of time on February 27, 2017, along with detailed billing records. Thereafter, Father filed an objection to Mother's request for attorney fees.[1]

[12]     The trial court issued an order on April 10, 2017. The court first adopted an agreement between the parties regarding medical reimbursement checks. The court then determined that Mother's lack of employment remained justified and, thus, it refused to impute income to her. With respect to college expenses, the court ordered Father to pay 75% and A.T. to pay 25% for expenses incurred

---

[1] Father's specific objections follow:

1. There has been no showing of contempt against [Father] to justify the fees requested;

2. [Mother] has submitted no evidence of her inability to pay for her own attorney, and has in fact been represented for several years by private counsel;

3. That to order attorney's fees…for the last several hearings serves to punish [Father] for his right to litigate legitimate claims.

*Appendix Vol. III* at 53.

since April 4, 2016,[2] as well as onward.  As of that point, Father was determined to owe $11,513 in college expenses.  The court also denied Father's request to modify his child support obligation.  Finally, the trial court ordered Father to pay Mother's attorney fees in the amount of $12,235.  Father appeals on a number of grounds.  Additional facts will be provided below as needed.

## Discussion & Decision

## College Expenses

[13]   Ind. Code § 31-16-6-2 establishes the trial court's authority to enter an educational support order for the payment of a child's college expenses.  In so doing, the trial court must consider the child's aptitude and ability, the child's ability to contribute to the educational expenses, and the ability of each parent to meet these expenses.  *Id.*  Even where the parents' statutory duty to support their child has ceased, an educational support order may extend past or be imposed after the child reaches the age of nineteen.  I.C. § 31-16-6-6(a).

[14]   Indiana Child Support Guideline 8(b) provides in part that the trial court "should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense."  Further, absent an

---

[2] A.T. began college in the Fall of 2014.  Her first-year expenses were covered by various grants.  She no longer received grants after her freshman year, but she did obtain financial aid through a federal direct unsubsidized loan for her sophomore and junior years.  Mother's petition for college expenses was filed at the end of A.T.'s sophomore year, and the hearing took place during the second semester of her junior year.

evidentiary justification in the record and a finding by the trial court that a proportional obligation would be unfair, the apportionment of educational expenses between the parents should be roughly proportional to their share of income.[3] *See In re Paternity of Pickett*, 44 N.E.3d 756, 765 (Ind. Ct. App. 2015).

[15] When reviewing an order for the apportionment of college expenses, we do not reweigh the evidence or determine the credibility of witnesses. *Winslow v. Fifer*, 969 N.E.2d 1087, 1092 (Ind. Ct. App. 2012), *trans. denied*. We consider only the evidence most favorable to the judgment and will affirm unless the trial court's order is clearly erroneous. *Id.* A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

[16] Father initially complains that the trial court's order only references the federal loans taken out by A.T. "but does not refer to specific amounts or sources of funding that may be available to her or places where she has sought funding if she has been denied funding." *Appellant's Brief* at 26. Father continues, arguing that the case should be remanded "for clarification and recalculation" because the order "does not include relevant or necessary details about sources, or possible sources, of outside funding for A.T." *Id.* Father's request is puzzling because no evidence was presented to the court below regarding

---

[3] Similarly, LR20-FL00-CVDR-7(H) of the Elkhart County Rules of Court provides that "the child shall be responsible for twenty-five percent (25%) of the remaining expenses [after scholarships/grants/gifts are deducted], and the balance shall be divided between the [parents] in proportions to their respective weekly adjusted income."

additional sources of funding available to A.T. The record indicates that A.T.'s freshman year was paid for by grants for which she no longer qualifies.[4] Since then, she has taken out loans to pay for college. Based on the evidence presented below, the trial court's order in this regard appears accurate.

[17] Next, Father claims that the trial court failed to set a minimum GPA requirement in its order. *See* Child Supp. G. 8(b) ("court should require that a student maintain a certain minimum level of academic performance to remain eligible for parental assistance"). On the contrary, the order indicates that "a 2.0 minimum is required."[5] *Appendix Vol. II* at 27. The evidence presented at the hearing was that A.T. had a cumulative GPA of 2.251 at the end of the 2016 fall semester, with a GPA for that semester of 2.900. These were the most recent grades available at the time, and A.T. was directed in the order to provide a copy of her semester grades to Father at the conclusion of each semester. Father has wholly failed to establish error in this regard.

[18] The bulk of Father's argument is that the trial court erred by ordering him to pay 75% of A.T.'s college expenses. His argument is difficult to follow but seems to boil down to a claim that he does not have the ability to meet these college expenses, despite the fact that he makes over $85,000 per year. He notes

---

[4] Mother testified that the grants were no longer available due to income ineligibility. Father's attempt to discredit this testimony on appeal amounts to an improper request for us to reweigh the evidence.

[5] Father's attorney indicated to the trial court that a 2.0 GPA requirement "was not unreasonable" and that A.T. was clearly capable of performing beyond that level. *Transcript* at 98.

that roughly 30% of his current take-home pay is being garnished to pay for his weekly child support obligation and his arrearage. Father then notes that in 2016 he was ordered to pay Mother more than $17,000 in medical expenses (incurred in 2006 through 2015) and $21,000 in attorney fees.

[19] We initially observe that Father invited the trial court to make him responsible for 75% of A.T.'s tuition, leaving A.T. responsible for the remaining 25%.[6] Thus, he cannot complain about this apportionment on appeal. Father acknowledged that he wanted to pay his "fair share" of college expenses. *Transcript* at 85. His argument below concerned only the amount of his obligation for A.T.'s living and transportation expenses while she was enrolled in college and living with Mother. He asked the trial court to impose a flat monthly rate of $360 ($250 for living expenses and $110 for transportation expenses). Father offered no specific basis for this proposed amount. It was just the amount that he was "willing to pay". *Id*. at 91. Mother, on the other hand, presented substantial testimony and evidence regarding these expenses. Based on Mother's evidence, the trial court determined that A.T.'s monthly living and transportation expenses while in college totaled $969.46. The court concluded that Father was responsible for 75% of these expenses, making his obligation – in addition to tuition – $727.09 per month of schooling.

---

[6] At the close of the evidence, Father's counsel argued with respect to college expenses, "the reimbursement should be, obviously, 75% and 25% percent [sic], to, ah, the child; 75 to my client for tuition, but for room and board to have a flat fee." *Transcript* at 99.

[20] Father has not established that the trial court's division of college expenses related to living and transportation while in school was clearly erroneous. His vague testimony that he was willing and able to pay only $360 does not establish his inability to pay twice that amount. As the record demonstrates, Father has had a propensity to attempt to avoid the full extent of his financial obligations to his children for well over a decade.

[21] Father tries to liken this case to *Hensley v. Hensley*, 868 N.E.2d 910 (Ind. Ct. App. 2007), where another panel of this court reversed the trial court's apportionment of college expenses. In *Hensley*, the trial court ordered that the two daughters pay one-third of the college expenses and that the parties then split the remaining amount with the father paying 86%. In reversing, we observed that the mother was voluntarily unemployed and the father had been diligently working overtime as an over-the-road truck driver and providing for his children (including two subsequently-born children). We noted particularly that the case did not involve "a parent who amassed a huge support arrearage by failing to pay support for a number of years." *Id*. at 916. Further, our calculations indicated that the father would be "unable to provide for himself or his family under this educational support order, while [the mother would] be permitted to remain unemployed". *Id*. Thus, we concluded that the result reached by the trial court was "inequitable and unjust." *Id*. Father is not similarly situated to the father in *Hensley* and, therefore, we find that case inapposite to the case at hand.

[22] His reliance on *Knisley v. Forte*, 875 N.E.2d 335 (Ind. Ct. App. 2007) and *Quinn v. Threlkel*, 858 N.E.2d 665 (Ind. Ct. App. 2006), is similarly misplaced. In *Knisley*, the trial court apportioned the payment of college expenses solely between the parents and made no findings or conclusions regarding the child's obligation or ability to obtain student loans. *See Knisley*, 875 N.E.2d at 341. In *Quinn*, the trial court not only split college expenses between the parents but ordered the parents to repay the modest loans their daughter had already taken out. The trial court also forbade the daughter from taking out any additional loans given her parents' incomes and resources. *Quinn*, 858 N.E.2d at 671.

[23] In the case at hand, the trial court ordered A.T. to pay 25% of her college expenses. The court also noted in its order that A.T. was working a part-time job and had undertaken college loans to pay her share of college expenses. Unlike in *Knisley* and *Quinn*, the trial court aptly considered A.T.'s ability to pay and ordered her to bear a significant portion of her college expenses.

[24] In sum, we reject Father's rather bald claim that the trial court ordered him to pay more than he should be obligated to pay. Father has failed to establish that the trial court's apportionment of college expenses amounted to clear error.

**Child Support**

[25] Father also challenges the denial of his motion to modify child support. Once again, we review only for clear error. *See Ashabranner v. Wilkins*, 968 N.E.2d 851, 854 (Ind. Ct. App. 2012).

Ind. Code § 31-16-8-1(b) provides that child support may be modified:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
> > (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
> >
> > (B) the order requested to be modified…was issued at least twelve (12) months before the petition requesting modification was filed.

The party seeking to modify a child support order bears the burden of establishing that these requirements have been met. *Barber v. Henry*, 55 N.E.3d 844, 850 (Ind. Ct. App. 2016).

On appeal, Father inaptly focuses on the twenty-percent threshold for modification under subsection (b)(2) rather than subsection (b)(1)'s alternative requirement of substantial and continuing changed circumstances making the existing support order unreasonable. The prior support order entered in 2008 was for the support of both A.T. and K.T. Once A.T. turned nineteen years old in June 2014, however, she was no longer entitled to child support. *See* I.C. § 31-16-6-6(a). Her emancipation created a substantial and continuing change that warranted modification of Father's child support obligation. *See Patton v. Patton*, 48 N.E.3d 17, 23 (Ind. Ct. App. 2015). Thus, the trial court erroneously

denied Father's modification motion. On remand, we direct the trial court to reduce Father's support obligation for K.T. to $226 per week retroactive to March 23, 2016.[7]

**Attorney Fees**

[28] Under I.C. § 31-16-11-1, a trial court has broad discretion to impose attorney fees on either party to a child support proceeding. *Thompson v. Thompson*, 868 N.E.2d 862, 870 (Ind. Ct. 2007). When determining whether to award attorney fees, the trial court must consider the resources and economic condition of the parties, their ability to engage in gainful employment and earn adequate income, and other factors bearing on the reasonableness of the award. *Allen v. Proksch*, 832 N.E.2d 1080, 1102 (Ind. Ct. App. 2005). We will reverse an award of attorney fees only if it is clearly against the logic and effect of the facts and circumstances before the trial court. *Brown v. Brown*, 776 N.E.2d 394, 397 (Ind. Ct. App. 2002), *trans. denied*.

[29] Father's argument regarding the award of attorney fees is brief. He claims that Mother's attorney charged for an excessive number of hours (48.94 hours) for the issues at hand (modification of support, college expenses, and medical

---

[7] The trial court denied Father's request for a credit for 166 overnights because he, in fact, exercises no overnights with K.T. and has not since her tragic accident. Although acknowledging that the parties stipulated to this credit in 2008, the trial court found no support for Father's contention that this stipulation would carry over to Father's 2016 petition to modify support. The trial court's conclusion in this regard was not clearly erroneous. We similarly find no error in the trial court's refusal to impute income to Mother, who continues to provide constant care for K.T.

reimbursement checks). He also insinuates that Mother's attorney submitted duplicate charges. In addition to not developing these contentions on appeal, Father did not challenge the request for attorney fees on these bases below. Therefore, he has waived these grounds on appeal.

[30] Moreover, we are not persuaded by Father's general claim that this award of attorney fees was unfair. We note this court's recent observations in *Toth II*:

> The trial court is well acquainted with the parties, including their resources, economic condition, and ability to maintain gainful employment. The parties have litigated child support, medical expenses, education expenses, and arrearages for several years….
>
> Importantly, Mother is not employed because K.T. requires constant care. It is unlikely that Mother's economic circumstances changed in the months between the hearing on the underlying matter and the date Mother filed her motion requesting appellate attorney fees. Also, the trial court specifically found that Mother's financial situation had not changed since the court issued the May 6, 2016 order….

*Toth II*, slip op. at 5-6 (footnote omitted).

[31] In the current order under review, the trial court once again determined that Mother's unemployment is justified and that no income should be imputed to her. The trial court went on to observe:

> Father suggested, but presented no evidence, that mother and [K.T.] were the beneficiaries of charitable fund raising…. The court's view of family and friends of mother and [K.T.] raising charitable funds for them points to their dire financial

circumstances rather than a financial windfall for them as father has consistently suggested.

*Appendix Vol. II* at 26-27.

[32] Though substantial judgments have been rendered against Father over the last two years, that fact alone does not necessitate a finding that the trial court abused its discretion by awarding attorney fees to Mother once again. On the record before us, we cannot say that the trial court abused its discretion.

### Admission of Evidence

[33] Finally, Father challenges the admission of Mother's Exhibit 10, which was a one-page handwritten list of Mother's expenditures in 2016 for grocery and household goods. This exhibit was admitted, over Father's objection, during Mother's testimony regarding these expenses. The court admitted it as a demonstrative exhibit.

[34] We review evidentiary rulings for an abuse of discretion, which will be found where the ruling is clearly against the logic and effect of the facts and circumstances. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). "Even when the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice." *Weinberger v. Boyer*, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011), *trans. denied*.

[35] At trial, Father offered a laundry list of objections to the admission of Exhibit 10. He reasserts some of these on appeal, as well as at least one new argument

– hearsay – which we will not address. Moreover, he does not discuss on appeal whether this exhibit qualified as a demonstrative exhibit.

[36] We are not persuaded by any of Father's arguments. Initially, Father contends that Mother failed to follow a local discovery rule and provide this exhibit to him ten days before trial (she provided it four days late), and therefore the exhibit should have been excluded. Father fails to acknowledge the broad discretion enjoyed by trial courts when ruling on discovery matters, and he has failed to establish an abuse of discretion. *See Smith v. Smith*, 854 N.E.2d 1, 4 (Ind. Ct. App. 2006).

[37] Father then presents an argument under Indiana Evidence Rule 1006, but the exhibit was not admitted pursuant to this rule. Nor is there any indication that Mother's check register, upon which the exhibit was based, was not made available for examination or copying by Father had he so sought.

[38] Lastly, Father argues that Exhibit 10 was not properly authenticated. On the contrary, Mother testified that she created the list from her check register where she tracked such expenses. She testified that the list represented her 2016 expenditures for groceries and household items through December 1, 2016.[8] Mother's testimony, based on her personal knowledge, sufficiently established

---

[8] The trial court expressly found Mother's testimony with regard to these expenses to be credible and observed that "the weekly amount for a family of four of $275.74 is reasonable." *Appendix Vol. II* at 28.

that the exhibit was what she claimed it to be. *See* Ind. Evidence Rule 901
(b)(1). The trial court did not abuse its discretion by admitting this exhibit.

## Conclusion

[39] We affirm the trial court's order with respect to college expenses and attorney
fees. Although we also affirm the trial court's refusal to impute income to
Mother or to credit Father for any overnights, we cannot agree with its
conclusion that "no substantial change in circumstance [exists] that would
allow for modification of support." *Appendix Vol. II* at 31. Modification is
clearly warranted in light of A.T.'s emancipation. Accordingly, on remand, the
trial court is directed to reduce Father's weekly child support obligation to $226.

[40] Judgment affirmed in part, reversed in part, and remanded with instructions.

Baker, J. and Bailey, J., concur.