## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 03 2015, 7:42 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jonathan M. Young
Newburgh, Indiana

ATTORNEYS FOR APPELLEE

Laurie Baiden Bumb
Bumb & Vowels, LLP
Evansville, Indiana

Edward W. Johnson
Johnson, Carroll, Norton, Kent &
Goedde, P.C.
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re The Marriage of:

Norman S. Carlson,

*Appellant-Respondent,*

v.

Jean E. Carlson,

*Appellee-Petitioner*

June 3, 2015

Court of Appeals Case No.
82A01-1410-DR-448

Appeal from the Vanderburgh
Superior Court
The Honorable Mary Margaret
Lloyd, Judge
Cause No. 82D04-0608-DR-00791

**Bailey, Judge.**

# Case Summary

Norman S. Carlson ("Father") appeals the trial court's orders requiring him to continue to pay post-secondary educational expenses for his sons with Jean E. Carlson ("Mother"), A.S.C. and R.S.C. (collectively, "Children"), and to pay medical expenses associated with R.S.C.'s treatments for cancer.

We affirm.

# Issues

Father raises several issues for our review. We consolidate and restate these as:

1. Whether the trial court abused its discretion when it ordered Father to continue to pay a portion of Children's post-secondary educational expenses;
2. Whether the trial court abused its discretion when it denied Father's petition to modify his post-secondary educational support obligations due to changed circumstances, including R.S.C.'s cancer diagnosis;
3. Whether the trial court abused its discretion when it ordered Father to pay through a wage assignment; and
4. Whether the trial court abused its discretion in its consideration of Children's ability to pay for a portion of their post-secondary educations.

# Facts and Procedural History

Father and Mother were married to one another, and the marriage produced two children, A.S.C. and R.S.C. In 2007, Father and Mother divorced.

On June 22, 2010, upon motion by Mother, Father was ordered to pay a portion of the post-secondary educational expenses for A.S.C.'s college

education. Father failed to pay these expenses, as well as numerous other court-ordered expenses related to health insurance for Children and R.S.C.'s high school education. As a result, on May 27, 2011, the trial court ordered that a portion of Father's wages be withheld to reimburse Mother for costs she incurred as the arrearage accumulated. The court also ordered an additional sum be withheld to provide security against Father's future noncompliance with court orders concerning payment of expenses.

[6] Despite this order, Father's noncompliance with court orders continued. By November 2012, Father had relocated to Oklahoma City, Oklahoma. Father refused to appear in person for a November 2012 hearing on a motion filed by Mother in anticipation of R.S.C. beginning college and seeking Father's contribution to post-secondary educational expenses for both Children.

[7] In Father's absence, on November 28, 2012, a hearing was conducted upon Mother's motion at which Mother provided testimony and other evidence. On December 21, 2012, the trial court ordered Father to pay expenses associated with Children's post-secondary educations. The order required that each child would be responsible for obtaining funding for one-third of college expenses, with Mother and Father sharing responsibility for the remaining two-thirds. Because of the difference in incomes as had been previously established with respect to child support orders, the court ordered Father to pay 73% of the two-thirds share attributable to him and Mother.

On May 21, 2013, Father filed a petition to modify his support obligation. On May 30, 2013, Mother filed a petition to modify Father's support obligation and to withhold funds from Father's retirement accounts. After a June 14, 2013, hearing, the trial court found that Father's child support obligations as to A.S.C. had been terminated based upon A.S.C.'s age, and ordered that any overage paid on behalf of A.S.C. would be credited against Father's child support obligations as to R.S.C. The trial court reiterated its prior requirements with respect to Father's obligation to pay costs associated with post-secondary educational expenses for Children, and further ordered Father to reimburse Mother for medical expenses incurred by Mother on behalf of R.S.C. Finally, the trial court ordered payment of funds from Father's retirement plan to reimburse Mother for Children's educational and medical expenses.

On April 23, 2014, Father filed a petition seeking to modify the trial court's order that he pay post-secondary educational expenses for Children ("Father's petition to modify"). Specifically, Father sought modification of the order on the grounds that he had not been consulted on Children's educational choices, that Children had not been required to take all financial aid offered (including student loans), and that the trial court's order "appear[ed] to [have] no time limit on when this expense payment is to stop." Appellant's App'x at 28.

On August 8, 2014, Father filed a petition to terminate the wage withholding order ("Father's petition to terminate withholding") associated with prior orders to pay for Children's educational and medical expenses, and for child

support associated with R.S.C., who reached nineteen years of age in March 2014.

[11] On August 29, 2014, Mother filed a petition seeking to compel Father's payment of medical and post-secondary expenses ("Mother's petition for payment").

[12] A hearing was conducted on all three petitions on September 2, 2014.[1] At the time of the hearing, A.S.C. was twenty-two years old, a senior at Purdue University, and was expected to graduate in December 2014. R.S.C. was nineteen years old and had completed a year of college at Vincennes University.

[13] However, by the time of the hearing on September 2, 2014, R.S.C. was not enrolled in class. In the summer of 2014, after completing three weeks of an internship in industrial robotics (his field of study at Vincennes University), R.S.C. had been diagnosed with stomach cancer. By the hearing date, R.S.C. had undergone the first two of several rounds of chemotherapy, and was scheduled to begin a third round of chemotherapy the following day. R.S.C.'s treatment was also to include surgery to remove a significant portion of his stomach. Weakened by chemotherapy, R.S.C. had withdrawn from classes to

---

[1] The hearing was scheduled to address only Father's petitions to modify and to terminate withholding. Both parties and the trial court agreed to proceed to hearing on Mother's petition for payment in conjunction with Father's petitions.

attend to his medical treatment, and planned to resume his college coursework upon completing his cancer treatments.

[14] Mother and Father each offered testimony during the September 2, 2014 hearing. Father's testimony included his contentions that Children should have been required to take all available financial aid, including student loans, and should have communicated directly with him to obtain any desired financial assistance for college expenses. Father also contended that Oklahoma City, where he then resided, had excellent cancer-care centers and that he should have been involved in the decision to treat R.S.C., suggesting Oklahoma City as the location for treatment instead of Indiana.

[15] At the conclusion of the hearing, the trial court ruled from the bench and denied Father's petition to modify, finding there had been no change in circumstances sufficient to warrant modification of the post-secondary educational support order.

[16] On October 1, 2014, the trial court entered a written order with findings of fact and conclusions thereon. The court found that Father's total support obligation for post-secondary educational expenses and medical care, through the date of the hearing, was $6,187.76. As a result of prior payments, Father was credited with $4,080, yielding an outstanding obligation of $2,106.76. The court reaffirmed its ruling from the bench concerning division of post-secondary educational expenses, and applied the same income-related allocation of

financial responsibilities—73% of payments to be made by Father, with the remainder to be made by Mother—to R.S.C.'s medical expenses.

[17] In addition, the prior wage withholding order Father sought to have vacated in his petition to terminate withholding had already expired. However, in light of Father's prior history of nonpayment and evasion, the trial court in its October 1, 2014 order also ordered a wage withholding order be put into place with respect to Father's educational support and medical obligations, and ordered a $200 per-week withholding be paid into the court. The trial court further ruled, "[w]hen there are no longer any educational or uninsured medical expenses … and [Father] is current in his obligations, the Wage Assignment shall be terminated," with the possibility that the wage withholding order would be lifted "after proof that [Father] is finally paying the Court ordered payments." Appellant's App'x at 17. In any case, however, the educational support order was limited to a period of five years or ten semesters—long enough for R.S.C. to obtain an undergraduate degree, though the ten-semester period "does not have to be consecutive should [R.S.C.] be medically unable to attend school full time." Appellant's App'x at 17.

[18] This appeal ensued.

# Discussion and Decision

# Standard of Review

[19] Father appeals various aspects of the trial court's order concerning post-secondary educational expenses, medical expenses, and wage withholding. On all such questions, we review a trial court's decisions for an abuse of discretion. *Hirsch v. Oliver*, 970 N.E.2d 651, 662 (Ind. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court misinterprets the law. *Neal v. Austin*, 20 N.E.3d 573, 574 (Ind. Ct. App. 2014). We do not reweigh evidence or reassess witness credibility, and we do not reverse the trial court unless there is no evidence to support the judgment, or there is undisputed evidence that leads only to a conclusion contrary to that of the trial court. *Hirsch*, 970 N.E.2d at 658.

# Order to Pay Post-Secondary Expenses

[20] Father's first contention on appeal is that the trial court erred when it ordered him to pay a portion of R.S.C.'s post-secondary educational expenses.

[21] Since July 1, 2012, the general obligation to pay child support terminates upon a child reaching nineteen years of age, except for educational needs or where statutorily-specified conditions exist. Ind. Code § 31-16-6-6(a). Section 31-16-6-6 goes on to provide, with respect to educational needs:

> (c) If a court has established a duty to support a child in a court order issued before July 1, 2012, the:
>
> > (1) parent or guardian of the child; or

(2) child;

may file a petition for educational needs until the child becomes twenty-one (21) years of age.

(d) If a court has established a duty to support a child in a court order issued after June 30, 2012, the:

(1) parent or guardian of the child; or

(2) child;

may file a petition for educational needs until the child becomes nineteen (19) years of age.

[22] Directing us to these provisions, Father contends that the trial court erred when it ordered him to pay a portion of R.S.C.'s post-secondary educational expenses because the statute "necessitates that where the most recent order establishing a child support obligation was issued after June 30, 2012, the child must file a petition for educational needs before the child becomes nineteen years of age." Appellant's Br. at 7. Father directs us to this Court's holding in *Neal v. Austin*, *supra*, in support of this proposition.

[23] In *Neal*, on July 17, 2012, the trial court entered a support order with respect to A.N., who was then seventeen years old. 20 N.E.3d at 575. A.N. reached the age of nineteen on January 30, 2014. *Id.* Nearly one month later, on February 28, 2014, A.N.'s mother filed a petition to require A.N.'s father to pay a share of A.N.'s post-secondary educational expenses. *Id.* Concluding that Subsection 31-16-6-6(d) applied in A.N.'s case because the most recent support order had been issued after June 30, 2012, this Court concluded that the petition for post-secondary educational support came after the statute's prescribed deadline, and thus the trial court in that case erred when it ordered A.N.'s father to pay A.N.'s educational expenses. *Id.* at 577-78.

[24]  *Neal* is inapposite here. A plain reading of the statute, together with the record in this case, establishes that Mother filed a petition seeking post-secondary expenses for both A.S.C. and R.S.C., which petition proceeded to a hearing on November 28, 2012. As a result of evidence presented at that hearing—which hearing Father refused to attend after being served notice on multiple occasions—the trial court ordered Father to pay a portion of both Children's post-secondary educational expenses. Appellee's App'x at A09. This order was entered well in advance of R.S.C.'s nineteenth birthday in March 2014.

[25]  Father points to a support order from October 11, 2013 and appears to argue that, because this order had been entered at a point after the June 30, 2012 statutory date and stated that Father no longer owed child support, R.S.C. was therefore ineligible to receive post-secondary educational support. Yet the October 11, 2013 order reaffirms the trial court's order concerning Father's obligation to continue to pay post-secondary educational support "until each son obtains his undergraduate degree." Appellant's App'x at 21.[2] Thus, as in *Neal*, Mother actively sought child support; unlike in *Neal*, however, Mother was not dilatory in seeking an order for post-secondary educational support, and the trial court twice reaffirmed its order as to Children. *See Neal*, 20 N.E.3d at 577-78.

---

[2] Father observes that the trial court refers to a June 22, 2010 order that applied only to A.S.C. The substance of the trial court's order, however, is clear in reaffirming Father's post-secondary educational support obligation as to both sons.

We accordingly conclude that the trial court did not err when in it reaffirmed for a second time its 2012 order that Father pay a portion of R.S.C.'s post-secondary education expenses.

## Modification of Educational Support

Father next challenges the trial court's decision not to modify his post-secondary educational support obligation, arguing that "there was ample evidence warranting modification" for changed circumstances, Appellant's Br. at 8, not the least of which was R.S.C.'s stomach cancer, which caused R.S.C. not to have enrolled in college courses at the time of the 2014 hearing.

Because educational expenses are in the nature of child support, the statutory factors applicable to modifications of child support are also applicable to modification of post-secondary educational support. *Schacht v. Schacht*, 892 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). As to those factors, the Indiana Code provides:

> (a) Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31-16-7-1 or IC 31-1-11.5-9(c) before their repeal) may be modified or revoked.
>
> (b) Except as provided in section 2 [relating to the provision of health insurance] of this chapter, modification may be made only:
>
> > (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
> >
> > (2) upon a showing that:
> >
> > > (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

I.C. § 31-16-8-1.

[29] Here, Father argues that there were changes in circumstances under Subsection 31-16-8-1(b)(1). At the hearing on Father's petitions, Father himself presented testimony that was primarily argumentative, concerning whether and how he was consulted about medical and educational decisions and expenses; much of this amounted to complaints about Mother or simple expressions of disagreement with the substance of prior court orders. None of this constitutes changed circumstances.

[30] We agree with Father that R.S.C.'s stomach cancer is a change of circumstances. However, that change of circumstances does not militate in Father's favor. Our Indiana Supreme Court has held that "a post-secondary educational order may include medical, dental, and optical insurance costs, as well as other health care costs, where the court finds such costs appropriate." *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007). The *Cubel* Court observed that medical costs provisions in such educational support orders are subject to the same limitations as exist in other post-secondary educational support orders. *Id.* at 1120-21 (citing I.C. § 31-16-6-2).

[31] Here, R.S.C. had enjoyed considerable success with his education, including achieving dean's list status each academic term. R.S.C. was a scholarship student, as well. It was within the trial court's discretion to order Father to

continue to pay "special medical, hospital, or dental expenses necessary to serve the best interests of the child" within the scope of the post-secondary educational support order. I.C. § 31-16-6-2(a)(2). And the urgency of ordering such payments was, if anything, elevated by R.S.C.'s cancer diagnosis.[3]

[32] We accordingly find no error in the trial court's conclusion that there was no change of circumstances entitling Father to a reduction in post-secondary educational support obligations.

## Wage Assignment

[33] Father also challenges the trial court's decision ordering that his funds be withheld from his wages to ensure his payment of his support obligations. Specifically, Father contends that the $200 per week amount is excessive in light of the prior total expenses evidenced in the record.

[34] Our legislature has provided that, where child support or similar obligations have been imposed, a court "may provide for such security, bond, or other guarantee that is satisfactory to the court to secure the obligation to make child support payments." I.C. § 31-16-6-5; *also* I.C. § 31-16-8-3 (permitting

---

[3] Father argues that if we find no error in the order requiring him to pay medical expenses, we should nevertheless reverse the order by "chang[ing] the law to end the medical expense obligation" associated with post-secondary educational support orders, in order to give the termination of support obligations for children over the age of nineteen "its full weight and authority." Appellant's Br. at 11. Father fails to articulate how the applicable statutory provisions are at odds with one another, and has accordingly waived this issue for our review. Ind. Appellate Rule 46(A)(8)(a) (requiring cogent argumentation and citation). Father's disagreement with the wisdom of provisions of the Indiana Code are disagreements with "policy choices made by the legislature." *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051, 1058 (Ind. 1997). His remedy, if he has one, lies with our General Assembly.

imposition of security, bond, or other guarantee in a proceeding modifying child support obligations). "These statutes allow for trial courts to be creative in fashioning guarantees of future support where it appears that a parent may not voluntarily pay support as ordered." *In re Paternity of Jo.J.*, 992 N.E.2d 760, 774 (Ind. Ct. App. 2013).

[35] Here, Father complains that the amount ordered for weekly withholding is excessive relative to the established expenses related to Children's post-secondary educations. Father's argument amounts to a request that we second-guess a trial court that had been required repeatedly to address Father's noncompliance with both orders for payment and orders to appear for hearings; indeed, at one point Mother was unable to obtain child support payment from Father except through proceedings supplemental to judgment. Given Father's history of nonpayment and noncompliance, together with the sudden change in R.S.C.'s health needs, the trial court was within its discretion to order Father to pay an amount that, as Mother testified at the evidentiary hearing on the petitions, would allow her to pay expenses as they arose. Tr. at 46.

[36] We address here, too, Father's claim that the trial court's educational support order as to R.S.C. should have been modified because it was essentially open-ended, with no real prospect of termination. Father's argument in this regard appears to disregard Paragraph 8 of the trial court's order of October 1, 2014, which expressly limits Father's educational support obligation as to R.S.C. to five years or for ten semesters, so that R.S.C. could complete an undergraduate degree with allowance for time taken to obtain medical treatment. Appellant's

App'x at 17.  It also disregards the trial court's order of September 2, 2014, which expressly "clarifies that the College Order as written only applies to an undergraduate degree, not a master's or doctorate degree."  Appellant's App'x at 24.

[37]  We conclude that the trial court's $200 weekly wage withholding was not an abuse of discretion.

## Extent of Child's Ability to Pay

[38]  We turn next to Father's contention that the trial court failed to consider R.S.C.'s ability to pay for his college education.

[39]  Indiana Code section 31-16-6-2 provides that when ordering post-secondary educational support, the court must take into account "the child's reasonable ability to contribute to educational expenses" through employment, loans, and other sources of financial aid.  I.C. § 31-16-6-2(a)(1)(B).  Father contends that the trial court did not use child support worksheets or take into account the sources of aid available to Children, and directs us to *Quinn v. Quinn*, 858 N.E.2d 665, 671 (Ind. Ct. App. 2006), for the proposition that failure to engage in such inquiries is reversible error.

[40]  Here, unlike *Quinn*, the trial court heard evidence concerning both Father's and Mother's incomes, as well as the Children's ability to obtain financial aid.  The trial court also had before it evidence of the tuition amounts and costs of living at both Children's colleges.  Each child obtained scholarships to help pay for their college educations.  Further, the trial court continued to use a formula it

had set several years prior for allocation of the expenses: one-third of college costs were to be funded by each Child, with the other two-thirds attributed to Mother and Father based on an existing 73%/27% split that roughly corresponded to the comparative annual incomes of Mother ($38,000) and Father ($95,000).

[41] The trial court had all this evidence before it, and the court took all this evidence into account in its order. Father's contentions to the contrary are an invitation to this Court to reweigh evidence and endorse Father's proffered solution: forcing the Children to obtain loans for all their educational costs, and to come to him for help when they need money. We decline his invitation, and we find no error in the trial court's decision not to require the Children to use student loans[4] instead of parental contributions to finance their college educations.

# Conclusion

[42] The trial court did not abuse its discretion when it ordered Father to pay post-secondary educational expenses for R.S.C. The trial court did not abuse its discretion when it denied Father's petition to modify his post-secondary support obligations. The trial court was within its discretion to enter a wage withholding order against Father as security to ensure his payment under the

---

[4] As a practical matter, in the absence of scholarship money, Children could use student loans for their one-third share of the educational expenses.

support order. The trial court did not abuse its discretion in assessing the ability of Children to contribute to the costs of their post-secondary educations.

[43] Affirmed.

Riley, J., and Barnes, J., concur.